County of DuPage, a Body Politic and Corporate, Plaintiff-Appellee, v. Gary-Wheaton Bank, as Trustee Under Trust No. 306, and the Elmhurst-Chicago Stone Co., Defendants-Appellants.

Gen. No. 11,633.

Second District, First Division.

August 12, 1963.

Rehearing denied September 19, 1963.

Rathje, Woodward & Dyer Associates, of Wheaton (John S. Woodward, of counsel), for appellants.

William J. Bauer, State's Attorney, DuPage County, of Wheaton (Donald J. Hennessy, of counsel), for appellee.

McNEAL, PJ.

Defendants Gary-Wheaton Bank, as Trustee under Trust No. 306, and the Elmhurst-Chicago Stone Co.

appeal from an order entered by the Circuit Court of DuPage County granting an injunction enjoining defendants from mining, loading and hauling of aggregate on certain premises, in violation of a county zoning ordinance.

The property consists of a forty-acre tract in unincorporated area of DuPage County, bounded on the east by the County Farm Road, on the south by railroad tracks, and on the north and west by farm land. The Elmhurst-Chicago Stone Company acquired the land for a gravel deposit on May 16, 1956. Title was taken in the name of Gary-Wheaton Bank, as Trustee, and the Stone Company was named as the sole beneficiary in the trust.

The property was used exclusively for farming from March, 1933 until November, 1956, and it was zoned for farming under the original DuPage County Zoning Ordinance adopted in 1935. When the Stone Company acquired the tract in 1956, one of the twenty-two uses permitted in a farming district under the 1935 ordinance was the following:

"14. Mining, loading and hauling of sand, gravel, humus, black dirt, or other aggregate, but not including any screening, washing or storage equipment or structures, excepting as may be specifically authorized as a variation for a limited period, after a public hearing by the Zoning Board of Appeals as provided by law and subject to such restrictions and conditions as the Board of Appeals finds appropriate to the location."

On January 29, 1957 an excavator employed by the Stone Company moved an Insley half-yard back hoe onto the southeast corner of the tract, stripped top soil from two areas about twenty feet square, and then dug aggregate from the stripped areas and loaded the material into six-wheeled dump trucks. Thirteen loads averaging twelve tons each were moved from the prop-

erty five or six miles and delivered for fill at the site of an electric tower base. One of the truck drivers testified that he worked nine hours hauling five loads of material, and that there were other trucks hauling material that day from the location. The excavator was on the premises eight hours. The president of the Stone Company testified that his company was engaged in operating a gravel pit at another location, and that it was his intention by digging in the 40-acre tract on January 29 to establish a gravel operation there.

On April 16, 1957 the Board of Supervisors of DuPage County adopted an ordinance effective May 1, 1957, which revised in its entirety the zoning ordinance adopted in 1935. Under the 1957 ordinance defendants' property and all adjoining lands except a trailer court south of the railroad, were zoned for single family residences, and use of the property for a gravel pit was prohibited. It was stipulated that gravel was mined and hauled away from the same property on January 9 and 10, 1958, and that a temporary injunction enjoining defendants from such operations was issued on January 10, 1958 and continued in effect until May 19, 1960, when the suit was dismissed without prejudice.

The Stone Company resumed digging and hauling material from the premises just prior to the filing of the present complaint on May 5, 1961. Plaintiff alleged that such excavation and removal of earth and establishment of a gravel pit was in violation of the provisions of the 1957 ordinance. Defendants answered that under the zoning provisions prior to 1957 the property was zoned for farming, that uses permitted in a farming district included mining and hauling of gravel or other aggregate, and that prior to May 1, 1957, the property as a whole was devoted to operations permitted under paragraph 14 of the farming

301

classification in the 1935 ordinance, and was therefore on the effective date of the 1957 ordinance, operating as a nonconforming use under the nonconforming use provisions of the latter ordinance. The 1957 ordinance provides that any nonconforming use which existed lawfully at the time of the adoption of the ordinance shall become nonconforming upon the adoption of the ordinance, that the nonconforming use of land may be continued, but that such use "shall not be expanded or extended beyond the area included in the ownership existing at the time it became nonconforming." Defendants also alleged that the Stone Company "has continuously since acquiring the property in the year 1956 continued to use said property for the purpose of mining, loading and hauling of sand, gravel, black dirt and other aggregate," in accordance with the continued nonconforming use of the premises under the 1957 ordinance.

Several persons who owned land across the County Line Road opposite the east side, and adjoining the north boundary, of defendants' property were permitted to intervene. Plaintiff and the interveners denied defendants' allegations with reference to establishment and continuance of a nonconforming use, and replied that section 17 of the 1935 ordinance required that a written permit be obtained before changing the use of any land, and that defendants never obtained a permit for the mining, loading or hauling of gravel and aggregate, and therefore no such use was established.

On such issues the chancellor heard the testimony of a number of witnesses and reviewed several exhibits including the 1935 and 1957 ordinances and a map showing zoning classifications under the latter ordinance. The evidence shows that mining and hauling operations were conducted on the premises only on January 29, 1957, on January 9 and 10, 1958, and just prior to the filing of the instant complaint; and

that interveners who were adjacent landowners and lived in the vicinity, did not observe the loading and hauling operations in January, 1957. In its final order the trial court found that the mining, loading and hauling of 13 loads of aggregate on January 29, 1957, did not establish a legal nonconforming use on the premises, and enjoined defendants from mining, loading and hauling aggregate on the property. This appeal followed.

In County of DuPage v. Elmhurst-Chicago Stone Co., 18 Ill2d 479, 165 NE2d 310, the Elmhurst-Chicago Stone Company appealed from an order enjoining the company from violating certain set-back requirements of the 1957 DuPage County Zoning Ordinance on a 30-acre tract acquired for limestone deposits in 1924. The tract was just across the street from a limestone quarry operated by the company for many years. Although no stone had been removed from the 30-acre tract prior to the 1957 ordinance, switch tracks installed in 1924 or 1925 had been used for conveying crushed stone from the quarry to the tract for stockpiling and for use in a concrete plant there. About half the tract was used for such purposes, a factory for making cement products occupied two or three acres, and part of the tract was farmed for weed control. The Supreme Court reversed the decree of the trial court, and at p 484 of the opinion said that as a general rule, in order to entitle an owner to the protection of a lawful nonconforming use, it is necessary that "the property be in actual use, as distinguished from a merely contemplated use, when the zoning restriction becomes effective. . . . In a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question

and the nature of its operations. We think that in cases of a diminishing asset the enterprise is 'using' all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed."

 Although the evidence in the instant case does not show that the tract in question has any close connection with other property operated by the Gravel Company as in the case cited above, principles announced in that decision are controlling here, and what the Supreme Court there said about the quarrying business is equally applicable to the business of mining gravel. Thus, in the production of gravel the land itself is a material or resource, constituting a diminishing asset consumed in the process of use, and in determining the existence of a nonconforming use, the ordinary concept of use must yield to the realities of that business.

In Hawkins v. Talbot, 248 Minn 549, 80 NW2d 863, defendant had removed a quantity of sand and gravel from his land when Coon Rapids adopted an ordinance zoning the property as residential. The ordinance permitted the continuance of nonconforming uses, but provided that no such nonconforming use should be enlarged or increased or extended to occupy a greater area of land than that occupied by such use at the time of the adoption of the ordinance. In affirming the trial court's refusal to enjoin operation of a gravel pit in violation of the ordinance, the Supreme Court of Minnesota referred to Lamb v. A. D. McKee, Inc., 10 NJ Misc 649, 651, 160 A 563, 564, and interpreted the nonconforming use provision "in the case of a diminishing asset, to mean all of that part of the owner's land which contains the particular asset, and not

merely that area in which operations were actually being conducted at the time of the adoption of the ordinance." In this connection it should be noted that the nonconforming use provision of the 1957 DuPage County ordinance recognizes such an interpretation and expressly provides that a nonconforming use shall not be extended beyond the area included in the "ownership" existing at the time it became nonconforming.

Moreover it has been held that it is not essential that a nonconforming use exercised at the time a zoning ordinance is enacted should have embraced an entire tract in order to entitle an owner to subsequently employ it all for the use. To so hold would deprive owners of the use of their property as effectively as if the ordinance had been completely prohibitive of all use. Such a result could not have been intended. 8 McQuillin Municipal Corporations, 3rd Edition 521, Zoning § 25.208; De Felice v. Zoning Board of Appeals of Town of East Haven, 130 Conn 156, 32 A2d 635, 147 ALR 161; Borough of Cheswick v. Bechman, 352 Pa 79, 42 A2d 60, 62.

■ In the instant case a substantial quantity of gravel or aggregate had been mined and hauled away from the tract before the 1957 ordinance was adopted. The Stone Company had proceeded beyond the testing and top-soil removal stages and had actually mined and hauled such material away from the premises as authorized under the 1935 ordinance. Section 17 of that ordinance expressly provides that "No permit shall be required for buildings, structures or land to be used for agriculture as herein defined," and as defined therein, mining and hauling of gravel and aggregate were included and permitted uses under the agricultural classification. The testimony of interveners and adjacent landowners that they did not observe the loading and hauling operations in January, 1957 did not contradict the fact that the Stone Com-

305

pany actually did conduct such operations. In our opinion the trial court's finding that such operations did not establish a legal nonconforming use on the premises is against the manifest weight of the evidence.

As defined in the decision of the Supreme Court of Illinois cited, the defendant Stone Company was "using" all of its 40-acre tract which contained gravel and aggregate, notwithstanding the fact that the entire tract was not yet under excavation. Under the provisions of the 1957 ordinance preserving nonconforming uses, defendant was authorized to continue such use within the area included in its ownership existing at the time such ordinance became effective, and its operations were not in violation of the ordinance. Accordingly the order of the Circuit Court of DuPage County is reversed, and this cause is remanded to that court with directions to dismiss the cause for want of equity.

Reversed and remanded with directions.

DOVE and SMITH, JJ, concur.