THE COUNTY OF DU PAGE, Plaintiff-Appellant, v. K-FIVE CONSTRUC-
TION CORPORATION, Defendant-Appellee (Du Page Materials Company *et
al.*, Defendants and Intervenors-Appellees; The People *ex rel.* Roland W.
Burris, Attorney General of the State of Illinois, Plaintiff).

Second District    No. 2—93—0875

Opinion filed October 26, 1994.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Carole R. Doris, and Anthony E. Hayman, Assistant State's Attorneys, of counsel), for appellant.

Byron D. Faermark, of Mindel & Faermark, and Phillip A. Luetkehans, of Schirott & Luetkehans, P.C., both of Itasca, for appellees.

JUSTICE COLWELL delivered the opinion of the court:
Plaintiff, the County of Du Page (County), appeals from a judgment in favor of defendant, K-Five Construction Company (K-Five), and defendants-intervenors, Du Page Materials Company (Du Page Materials) and Elmhurst-Chicago Stone Company (ECS). The trial court denied the County's request for injunctive relief and statutory fines against defendants for their alleged illegal use and operation of an asphalt batching plant. On appeal, the County claims that (1) defendants' abandonment of the use of the asphalt plant defeats its previous status as a legal nonconforming use under the Du Page County zoning ordinance, (2) the asphalt plant is not a permitted accessory use to the nonconforming principal land use as a stone quarry, and (3) the County is not barred by the doctrines of equitable estoppel or *laches* from enforcing its zoning ordinance against defendants. We affirm.

The County's complaint concerns an asphalt batching plant located near Route 83 and North Avenue in unincorporated Du Page County on land owned by ECS. ECS bought the land, including the site which is the subject of this litigation, during the early 1920's. Much of the property has been used as a stone quarry over the past 70 years. Since the quarry was in operation prior to the inception of the Du Page County zoning ordinance, it is permitted as a preexisting use under the ordinance and operates as a legal nonconforming use.

An asphalt plant was placed on the property shortly after the land was bought in the 1920's. This plant was in operation when the Illinois Supreme Court issued a 1960 opinion holding that ECS had the right to utilize the entire property for its existing uses. See *County of Du Page v. Elmhurst-Chicago Stone Co.* (1960), 18 Ill. 2d 479.

In 1975, defendants dismantled and discontinued use of the asphalt plant for economic reasons since the cost of producing asphalt had become very expensive. In 1985, a second asphalt plant, which is the subject of this litigation, was placed on a section of the property west of Route 83 and east of the location of the first plant. A stabilized base course plant, or pug mill plant, had previously been operating at this site.

Du Page Materials, a joint venture, was formed in 1985 and is the actual owner of the plant. The three partners in this venture are Outerbelt Contractors, Wilmington Industrial (a wholly owned subsidiary of ECS), and Chicago Materials (a wholly owned subsidiary of K-Five). K-Five is the managing partner and runs the plant on a day-to-day basis. Du Page Materials operates the plant pursuant to a lease with ECS dated April 1, 1985.

In March 1985, Du Page Materials received a temporary permit to operate the asphalt plant until November 1, 1985. Du Page Materials applied for and received similar temporary permits to operate the plant in October 1985 and August 1986 and thereafter until the last temporary permit expired on December 15, 1987. The record indicates that the County was buying asphalt directly from Du Page Materials at this site and continued to do so from 1987 to 1990.

On March 21, 1988, Byron Faermark, attorney for ECS, drafted a letter to Robert Raymond in the Du Page County development department. The letter advised Raymond of ECS' intention to continue its asphalt plant operation on the subject site without applying for temporary permits. Faermark referred to the 1960 supreme court case of *County of Du Page v. Elmhurst-Chicago Stone Co.* in his letter and asserted that this case recognized ECS' right to engage in the business of quarrying and related activities under "grandfather" rights. Accordingly, Faermark said it was ECS' position that any further applications for temporary permits were unnecessary.

On January 10, 1989, Ken Lahner, who was at that time the director of the Du Page County building department, drafted a letter to John Wielebnicki, an Elmhurst resident who had inquired as to the legal basis under which the ECS quarry operated its asphalt plant. Lahner also cited the 1960 supreme court case in the letter

and concluded that the asphalt plant is within the scope of the quarry operation. Lahner stated that the plant is an incidental use to the construction activities and therefore continued to be a lawful nonconforming use and an exception to the enforcement authority of the County. Lahner wrote a similar letter to another Elmhurst resident, Stephanie Christian, on June 1, 1989, in which he expressed the same opinion that the asphalt plant was operating as a lawful nonconforming use. Copies of this letter were forwarded to the Du Page County board chairman and to the presidents of K-Five and ECS.

The record indicates that in 1990 Du Page Materials decided to upgrade the asphalt plant. The partners spent about $600,000 in improvements in order to increase production, decrease costs, and comply with environmental regulations.

The County filed suit against K-Five in May 1991. Count I alleged that the asphalt plant violated the County's zoning ordinance in that the subject property was located in an I-1 light industrial district and the use complained of was limited under the ordinance to the I-2 industrial district as a special use. Count II alleged that the plant's activities violated air, odor, and noise pollution standards and caused citizens to suffer headaches, nausea, burning sensations, irritation to nose and eyes and skin, and breathing difficulties.

In 1991, the Illinois Attorney General filed a complaint against defendant for air and noise pollution, failure to obtain necessary operating permits, and common-law nuisance. This suit was consolidated with the County's suit. The parties agreed to a consent order on May 29, 1992, which is not at issue in this appeal. This order required K-Five to make substantial modifications to the asphalt plant and its operations. The testimony indicates that $125,000 to $150,000 was spent for environmental modifications. The consent order specifically stated that the County was not barred from attempting to enforce its own allegations of zoning ordinance violations.

Trial of the County's suit commenced in May 1993. Dalip Bammi, director of the Du Page County development department, testified that it was his job to interpret the ordinance. Bammi explained that in the 1975 zoning ordinance the zoning classifications for manufacturing listed asphalt batching plants as a special use in M-1 manufacturing districts (now called I-1 industrial districts), which is the classification for the subject property here. However, Bammi said that no special-use permit was ever granted for the subject property.

Bammi explained that the terminology in the 1985 Du Page County zoning ordinance, effective April 25, 1985, was changed so that M-1 and M-2 were now labeled I-1 and I-2. Under the 1985

ordinance, the I-1 zoning classification does not allow asphalt plants as either a permitted or a special use and the I-2 category allows asphalt plants only as a special use. Bammi opined that an asphalt plant placed on the subject property in 1985 would not be a legal nonconforming use because the subject property was zoned I-1 in 1985.

On cross-examination, Bammi admitted that since the County issued a temporary permit for the asphalt plant prior to the effective date of the 1985 ordinance, then the 1975 ordinance would apply to the resumed operation of the asphalt plant. Bammi agreed that accessory uses are permitted uses under the zoning ordinance, but he maintained that that would not legalize the use in question since he did not believe that the asphalt plant was an accessory use to the quarry.

Dennis DeVitto, vice-president of K-Five, testified that it would cost approximately $600,000 to disassemble the asphalt plant and reerect it in another location. DeVitto identified several purchase orders indicating that the County bought asphalt and other materials from Du Page Materials on the subject property during the years 1987 to 1990.

Ken Lahner testified that he was the former director of the Du Page County building department in 1989. Lahner said he currently is vice-president of ECS. He testified as to the letters he sent out on behalf of the County in 1989 in response to citizen complaints about the asphalt plant. Lahner said he did not discuss the letters with Bammi because he did not feel it was a zoning enforcement issue, nor did he feel it was Bammi's responsibility. Lahner said he sent copies to the presidents of ECS and K-Five because he wanted them to know that the County considered the plant to be operating legally.

Lahner said that one of ECS' activities is to grind asphalt for recycling. He said that having an asphalt plant nearby gives ECS a cheap and convenient place to sell its materials because it saves on transportation costs.

Thompson Dyke, the owner of an urban planning firm, testified as an expert for defendants. Dyke opined that the asphalt plant was a legal accessory use to the principal use of the quarry under the 1975 Du Page zoning ordinance. He explained that the asphalt plant has been subordinate to the mining and quarrying operation and would thus be considered an accessory use. Dyke testified that it is common to find an asphalt plant at a quarry and that his survey of 44 asphalt plants in the metropolitan area of Chicago revealed that 43% of them are in quarries.

Robert Brandys, a safety and environmental consultant, testified as the County's expert. Brandys monitored the asphalt plant after the County received several citizen complaints about the pollution from the plant. He said that changes were made to the plant after the parties entered into the consent decree but that odors were still being emitted after the environmental devices were installed. On cross-examination, Brandys admitted that the frequency of complaints had decreased since the consent decree.

The trial court denied the County's request for injunctive relief. The court found that (1) the asphalt plant was an accessory use since it was incidental to the principal use of the quarry; (2) the discontinuance of the contested use was temporary and did not constitute nor was it intended to be an abandonment of the use; (3) the use continued prior to April 25, 1985; (4) the contested use was a preexisting, nonconforming legal use under the applicable Du Page County zoning ordinance; (5) the County committed affirmative acts regarding the subject property and contested use; (6) these acts induced the continuation of the contested use of the property by the defendants; (7) defendants reasonably and justifiably relied on the aforesaid acts to their detriment; (8) the County is estopped from enforcing its zoning ordinance, if applicable and if defendant is in violation thereof; (9) the County knew of the contested use on the subject premises since 1985 but took no action for five years, during which defendants changed circumstances regarding their use of the property; (10) the enforcement of the zoning ordinance, if applicable and if defendant is in violation thereof, would cause substantial economic harm and prejudice and detriment to defendant and the County has failed to prove harm to the general public if the ordinance is not enforced; and (11) the County is barred by the doctrine of *laches* from the enforcement of its zoning ordinance if applicable regarding the subject property. The County filed a timely appeal.

We believe the asphalt plant was an accessory use to a legal nonconforming use under the provisions of the 1975 Du Page County zoning ordinance. (Du Page County Zoning Ordinance § VII(B)(1)(u) (1975); see also *Peterson v. City of Highland Park* (1987), 153 Ill. App. 3d 826, 839 (defining "incidental" use as anything usually connected with the principal use, something which is necessary, appertaining to, or depending upon the principal use).) However, we believe that the County correctly asserts that the defendants' discontinuance of this use for a period of 10 years constituted an abandonment of the use so as to defeat its status as an accessory to a legal nonconforming use under the ordinance. The 1975 zoning ordinance provides:

"C. \*\*\*

Any non-conforming use, building or structure which existed lawfully at the time of the adoption of this ordinance and which remains non-conforming, and any use, building, or structure which shall become non-conforming upon the adoption of this ordinance or of any subsequent amendments thereto, may be continued subject to the regulations as follows:

\* \* \*

3. \*\*\*

b. If the non-conforming use of land is discontinued for a period of 12 consecutive months, it shall not thereafter be renewed, and any subsequent use of land shall conform to the regulations of the district in which the land is located." (Du Page County Zoning Ordinance § IV(C)(3)(b) (1975).)

The 1985 ordinance states that "[i]f the nonconforming use of a building, structure or property is discontinued for a continuous period of twelve (12) months, it shall not be renewed, and any subsequent use of the building, structure, or property shall conform to the use regulations of the district where such building, structure, or property is located." Du Page County Zoning Ordinance § 37—5.2—6 (1985).

■ A claim of abandonment of a nonconforming use must be shown by more than a mere cessation of use; such a claim also requires that an intent to abandon the use be demonstrated. (*Hammond v. City of Chicago* (1985), 139 Ill. App. 3d 98, 102; *City of Des Plaines v. La Salle National Bank* (1976), 44 Ill. App. 3d 815, 820.) We believe the defendants' 10-year discontinuance of asphalt operations on the subject property constituted an abandonment of that use. The evidence indicates that ECS dismantled the first plant in 1975 and terminated all asphalt production for the next 10 years. Defendants resumed asphalt production in 1985 at a second plant in a different location on the subject property west of the first plant. DeVitto testified that defendants purchased new materials to assemble the second plant. The evidence indicates that the components of the plant were shipped in from other sites and were not taken from the dismantling of the first plant.

Defendants maintain that they never intended to abandon the asphalt plant. Defendants cite to *Hammond v. City of Chicago* (139 Ill. App. 3d 98) in support of their position. In *Hammond,* the court upheld a zoning decision allowing the resumption of a bakery, a nonconforming use, which had been discontinued for more than a year. As in the instant case, the zoning ordinance in *Hammond* stated that a nonconforming use cannot be legally resumed if the premises become vacant and remain unoccupied or are not used for a

continuous period of one year. (*Hammond*, 139 Ill. App. 3d at 101.) The court concluded that no abandonment occurred since the discontinuance was found to be suspended during the time when the premises were subject to an automatic bankruptcy stay and were tied up in foreclosure proceedings. (*Hammond*, 139 Ill. App. 3d at 103-04.) In contrast, the discontinuance here, which was for a much longer duration and did not involve ongoing legal proceedings, clearly was an abandonment. Defendants' abandonment of the plant defeated the plant's prior status as a legal nonconforming use and rendered the resumption of the use in 1985 an illegal use under the provisions of the zoning ordinance.

We note that the plant's resumed use in 1985 would be illegal under both the 1975 and 1985 zoning ordinances. Under the 1975 ordinance, an asphalt batching plant is listed as a special use in the M-1 district where it is located (Du Page County Zoning Ordinance § VII(B)(2)(n) (1975)); therefore, defendants would have been required to apply for a special-use permit. Under the 1985 ordinance, asphalt batching plants are not listed as either permitted or special uses in the I-1 classification where the plant is located. Du Page County Zoning Ordinance §§ 37—10.1—1, 37—10.1.2 (1985).

■ Nonetheless, we hold that the County is equitably estopped from enforcing its zoning ordinance against the asphalt plant. The party claiming estoppel against a municipal entity must demonstrate that (1) an affirmative act of the municipality induced justifiable reliance on the part of the claimant, (2) the claimant acted on the basis of that reliance, and (3) the claimant substantially changed its position as a result of its reliance. (*City of Chicago v. Unit One Corp.* (1991), 218 Ill. App. 3d 242, 246.) While the doctrine of equitable estoppel is applicable to municipal corporations (*Tim Thompson, Inc. v. Village of Hinsdale* (1993), 247 Ill. App. 3d 863, 878), its use against a public body is not favored (*Burnidge Brothers Almora Heights, Inc. v. Wiese* (1986), 142 Ill. App. 3d 486, 495). Where it is invoked against a governmental entity exercising its governmental functions, estoppel will lie only in extraordinary or compelling circumstances. *Thompson*, 247 Ill. App. 3d at 878.

■ The affirmative act which induces a party must be an act of the municipal entity itself, such as legislation, rather than the unauthorized act of a ministerial officer or a ministerial misinterpretation. (*American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342, 348.) Generally, a public body cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official or made in derogation of a statutory provision. (*Lindahl v. City of Des Plaines* (1991), 210 Ill.

App. 3d 281, 295.) As previously noted, Ken Lahner wrote two letters to concerned citizens during his tenure as director of the Du Page County building department which stated that the County considered the defendants' operation of the asphalt plant to be legal. We conclude that Lahner clearly had the power to determine whether a property was in violation of the zoning ordinance. Lahner testified that he oversaw both the building department, which issued building permits in the incorporated areas, and the zoning enforcement division. Lahner said that the zoning enforcement division would check possible zoning violations and make sure the zoning was enforced in the County. Therefore, Lahner had the authority to write the letters and submit an opinion that consequently bound the County.

■ The County asserts that Bammi, not Lahner, was the appropriate authority to draft letters addressing possible zoning violations. Bammi testified on rebuttal that his authority derived from section 37—14.2 of the ordinance, which states in pertinent part:

"The Director, County Development Department and such zoning enforcing officers or assistants that have been, or shall be, duly appointed by the County Board *shall enforce this Ordinance* and in addition thereto, and in furtherance of such authority shall perform the following duties: ***." (Emphasis added.) Du Page County Zoning Ordinance § 37—14.2 (1985).

Bammi said that, as director of the County development department, he ultimately determines enforcement of the ordinance. However, Bammi admitted that the referenced section also gives enforcement authority to zoning enforcement officers in the zoning enforcement division. Bammi admitted that if there was a complaint of a zoning violation in 1989, it would have gone to the zoning enforcement division, which would then determine if a violation existed. Bammi further admitted that, in 1989, the zoning enforcement division was under the building department which, at that time, was headed by Ken Lahner. Bammi said he would have had the authority to write the letters Lahner wrote to the citizens regarding the asphalt plant; however, Bammi could cite no written policy beyond section 37—14.2 of the Du Page County zoning ordinance which gave him any such authority at that time.

We reject the County's argument that, even if Lahner was authorized to interpret the zoning ordinance for enforcement purposes, the interpretation as contained in the letters to third parties does not bind the County as its affirmative act. We believe these letters induced defendants' justifiable reliance since carbon copies of at least one of these letters were sent to the presidents of ECS and K-Five.

Charles Hammersmith, president of ECS, testified that when defendants made the decision to upgrade the asphalt plant late in 1990, he thought that "the letter from Ken Lahner to Christian was— gave us the total authority that we could move ahead."

Defendants' reliance on the County's stated opinion as to the legality of the asphalt operations was further strengthened by the fact that the County purchased asphalt directly from Du Page Materials, the owner of the plant, from 1987 to 1990, the time period after the plant's temporary permits had expired. Upon their belief that the asphalt plant was a legal nonconforming use, defendants expended approximately $600,000 on environmental and efficiency improvements in 1990. Defendants also testified that, although the plant is technically movable, the cost to do so would be about $600,000. Allowing the County's request to enforce the zoning ordinance at this point would place a substantial burden upon defendants.

■ Similarly, we also conclude that the County is barred by the doctrine of *laches* from enforcing the zoning ordinance. *Laches* is a doctrine which bars a plaintiff relief where, because of the plaintiff's delay in asserting a right, the defendant has been misled or prejudiced. (*City of Rochelle v. Suski* (1990), 206 Ill. App. 3d 497, 501.) While a delay in asserting a right alone does not constitute *laches*, it is inequitable and unjust to grant relief to the plaintiff if the defendant has relied on the circumstances complained of to his detriment and the delay has been unreasonable. (*Suski*, 206 Ill. App. 3d at 501.) Although the doctrine of *laches* is ordinarily not applied to the State (*Pavlakos v. Department of Labor* (1985), 111 Ill. 2d 257, 265), it may be appropriate in extraordinary circumstances (*Haeflinger v. City of Wood Dale* (1984), 129 Ill. App. 3d 674, 679). As with the doctrine of equitable estoppel, mere nonaction of governmental officers is not sufficient since there must have been " 'some positive acts by the officials which may have induced the action of the adverse party under circumstances where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had previously done.' " *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 448-49, quoting *City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 614.

As the trial court noted in its judgment order, the County had known of the asphalt plant operating on the subject property since 1985 because defendants applied for a temporary permit. However, the County took no action under the zoning ordinance until May 1991, over five years later, when this lawsuit was filed. During this time, defendants received Lahner's letter regarding the legality of

the plant and experienced changed circumstances regarding the use of the property in that they decided to spend approximately $600,000 on improvements to the plant.

We agree with the trial court's finding that the enforcement of the zoning ordinance would cause substantial economic harm and prejudice to defendants and that the County has failed to prove harm to the general public if the ordinance is not enforced. (See *Suski*, 206 Ill. App. 3d at 503 (where reviewing court noted that, when considering a defendant's assertion of the defense of *laches* against the city's action, the issue is whether the city's delay in asserting its right has prejudiced defendant and, if so, whether the cost to defendant is great and the corresponding benefit to the city is minimal).) While the County's expert, Robert Brandys, testified to the noise and air pollution problems presented by asphalt plants generally, little evidence was presented as to the specific problems created by the asphalt plant on the subject property. Brandys described briefly the air emissions and odors of which the citizens had complained and that he had experienced himself while monitoring the plant. However, Brandys admitted that he had not performed any tests since the environmental changes were made to the plant pursuant to the consent order. Brandys testified that the frequency of complaints had decreased since the consent order was implemented and the odor level around the plant had decreased as well. Moreover, Brandys said he was not aware of any short-term health risks posed by the operation of the asphalt plant and he opined that the facility's emissions were "below one in a million risk level."

Since the County has not presented sufficient evidence to show a considerable benefit to the public, and defendants have shown that enforcement of the ordinance would cause them substantial economic harm, we hold that the County is barred by the doctrine of *laches* from enforcing its zoning ordinance. Accordingly, we hold that the trial court properly denied the County's request for a permanent injunction.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS, P.J., and WOODWARD, J., concur.