DAVID L. BAINTER *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF ALGONQUIN *et al.*, Defendants-Appellees.—THE VILLAGE OF CARY, Plaintiff-Appellant, v. THE VILLAGE OF ALGONQUIN *et al.*, Defendants-Appellees.

Second District   Nos. 2—94—1094, 2—94—1095 cons.

Opinion filed January 12, 1996.—Rehearing denied February 11, 1997.

746

Bernard V. Narusis, of Narusis & Narusis, of Cary, and David A. Novoselsky and Linda A. Bryceland, both of David A. Novoselsky & Associates, of Chicago, for appellant Village of Cary.

Tracy D. Kasson, of Rathje, Woodward, Dyer & Burt, of Wheaton, for other appellants.

Mark A. Balkin and Robert K. Bush, both of Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago, for appellees Andrew Halik and Village of Algonquin.

William M. Franz and Sandra S. Kerrick, both of Franz & Kerrick, of· Crystal Lake, for appellees Chicago Title and Trust Company and Meyer Material Company.

JUSTICE BOWMAN delivered the opinion of the court:

On October 19, 1993, pursuant to petitions filed by Meyer Material Company (Meyer) and the Chicago Title and Trust Company (CT&T), as trustee under trust No. 53278, the Village of Algonquin (Algonquin) passed several ordinances which (1) annexed property referred to as tract 3; (2) zoned tract 3 as an I-1 industrial district; and (3) granted a special use to allow the extraction of gravel and sand from tract 3. Plaintiffs, the Village of Cary (Cary) and certain homeowners residing adjacent to tract 3, commenced separate actions in the circuit court of McHenry County against defendants Meyer, CT&T, Algonquin, and Andrew Halik, Algonquin's building commissioner. These actions sought, inter alia, a declaratory judgment stating that Algonquin's actions were void and injunctive relief enjoining defendants from utilizing tract 3 for any use authorized by the October 19, 1993, ordinances. Upon defendants' motions, the circuit court dismissed plaintiffs' actions under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). Plaintiffs

appealed separately, and this court consolidated the two cases. For the following reasons, we affirm.

## BACKGROUND

Meyer mines, manufactures, and trucks gravel. Meyer currently owns approximately 690 acres of land in McHenry County, which is divided into four separate tracts, each containing gravel deposits. These tracts all abut Illinois State Route 31. Tract 1 is home to Meyer's processing plant, where the mined gravel is washed, crushed, screened, weighed, and sold. Processed gravel is either sold on the market or used on site in one of several manufacturing operations. The plant has been located on tract 1 for at least 50 years.

Until the late 1960s, the gravel deposits on tract 1 were sufficient to supply the plant. At that time, however, Meyer needed to acquire additional mines to keep the plant in operation. Thus, in 1968 Meyer purchased tract 4 (except for the most northwesterly 73 acres) as a new mine. Tract 4 is located on the eastern side of Route 31; tract 1 is located on the western side. The southwest boundary of tract 4 is located at approximately the same latitude as tract 1's northern boundary. In 1971, Meyer constructed a tunnel under Route 31 which connected the plant on tract 1 with the mining operations on tract 4. Gravel extracted from tract 4 is placed on a conveyor system and hauled via the tunnel under Route 31 to the plant located on tract 1. Meyer has continuously mined tract 4 from 1970 or 1971 to the present.

In July 1971, Meyer acquired an option to purchase tract 3. Tract 3 is located to the east of Route 31 and directly north of tract 4. The two tracts are separated by Klasen Road. Meyer purchased the property in September 1971 following tests which indicated that tract 3 contained substantial gravel deposits.

In 1971, tracts 3 and 4 were zoned "F" farming district by the 1962 McHenry County zoning ordinance. The uses permitted in an "F" farming district were:

> "Mining, loading and hauling of sand, gravel, humus, black dirt, or other aggregate, but not including any screening, crushing, washing, or storage equipment or structures excepting as may be specifically authorized as a variation for a limited period." McHenry County Zoning Ordinance § 8(J) (1962).

In 1977, Meyer constructed a nine-foot-diameter tunnel under Klasen Road connecting tracts 3 and 4. Meyer also installed a conveyor system on tract 3 for future transport of gravel deposits from tract 3 to tract 4 and then from tract 4 to the processing plant on tract 1. In 1978 and 1979, Meyer extracted and stripped some materials from tract 3 to construct an earthen berm along a portion of the

western boundary of tract 3. These extracted materials were never commercially used by the plant on tract 1. In 1989 and 1990, Meyer stripped tract 3 of overburden in order to construct a line-of-sight berm along tract 3's east boundary. Tract 3 has also been farmed, but it has never been mined for gravel.

In 1977, Meyer applied for a special use permit from McHenry County to wash and crush gravel on tract 3. In 1978, the McHenry County State's Attorney informed the McHenry County Zoning Board of Appeals that, pursuant to *County of McHenry v. Sternaman* (1978), 63 Ill. App. 3d 679, it no longer had zoning control over mining operations. Accordingly, Meyer withdrew its application for a special use permit.

On March 15, 1993, CT&T, apparently as trustee of a land trust comprising tracts 1, 2, 3, and 4, and Meyer, as the beneficiary of the trust, petitioned Algonquin to annex those tracts to Algonquin. CT&T also filed a petition to zone tract 3 as an I-2 industrial district with a special use for the extraction of gravel. Tract 3 is approximately one mile from Algonquin's corporate limits. Plaintiffs, the Village of Cary and certain homeowners residing adjacent to tract 3, objected to the petition on the ground that granting the special use would endanger the health, safety, and welfare of the surrounding community. The homeowners reside in the Village of Cary in the Fox Trails subdivision. Approximately 25 residences in Fox Trails adjoin the northeast corner of tract 3. Construction of the houses in Fox Trails apparently began in the late 1970s or early 1980s.

On March 29, 1993, the Algonquin Zoning Board of Appeals (Zoning Board) began the first of numerous public hearings on whether tract 3 should be zoned I-2 industrial district with a special use to extract gravel. On August 4, 1993, the Zoning Board recommended and approved the zoning. The Zoning Board made the following findings: that gravel mining on tract 3 posed no significant health risks to Cary's waterworks system; that any dust or fugitive dust emanating from tract 3 would be minimal; and that insufficient evidence was presented to support the homeowners' assertions that gravel mining on tract 3 would be injurious to their property values.

On October 19, 1993, Algonquin issued several ordinances. Ordinance No. 93—0—54 approved an annexation agreement between CT&T, Meyer, and Algonquin. In the annexation agreement, CT&T, Meyer, and Algonquin acknowledged:

"Meyer's mining of Tract 3, according to the restrictions imposed in this Annexation Agreement, is lawful under two independent legal authorities consisting of (1) its rights to mine as a legal nonconforming use; and (2) its right to mine pursuant to the Al-

gonquin Special Use permit issued after a zoning hearing as required by law, both authorities existing simultaneously, and neither being in abrogation of the other."

Ordinance No. 93—0—55 annexed tracts 1, 2, 3, and 4 to Algonquin. Ordinance No. 93—0—56 zoned tract 3 as "I-1 Industrial District, Limited" under the Algonquin zoning ordinance. This ordinance also granted Meyer a special use permit "for the extraction of gravel, sand or other raw materials which shall only include mining, on-site processing limited to portable primary crusher/feeder, outside storage of equipment and stockpiles as further conditioned in Section 9 of this Ordinance." Algonquin, Ill., Zoning Ordinance, No. _____ (19___).

On December 8, 1993, Cary filed a complaint against defendants seeking declaratory and injunctive relief relating to the October 19, 1993, ordinances. Cary alleged that Algonquin disregarded its own zoning standards by failing to consider the public health, safety, or welfare of the property or persons in Cary who reside near tract 3. Specifically, Cary alleged that the October 19, 1993, ordinances ignored the rights of adjacent landowners in Cary who purchased their property and improved it in reliance on the continuance of the existing zoning classification. Cary also alleged that the extraction of gravel from tract 3 would "permanently remove near surface geologic deposits which would otherwise provide some protection of the underlying ground water and will permanently increase the potential for contamination of the ground water which provides the water supply of [Cary's] Well No. 10." Well No. 10 is the primary well in Cary's waterworks system.

On January 19, 1994, certain homeowners living in Fox Trails filed a verified complaint for declaratory and injunctive relief against defendants. The homeowners alleged that Algonquin acted in violation of its zoning standards in passing the October 19, 1993, ordinances, thereby making the ordinances void *ab initio*. The homeowners' complaint requested that the trial court enter a judgment declaring ordinance No. 93—0—56 void *ab initio*. The complaint also requested the trial court to enter preliminary and permanent injunctions enjoining Algonquin from issuing any permits based on ordinance No. 93—0—56 and enjoining Meyer from utilizing tract 3 for any use authorized in ordinance No. 93—0—56.

Meyer and CT&T filed separate motions to dismiss plaintiffs' complaints pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 1994)). Algonquin and Halik filed separate motions to dismiss. The trial court granted the motions and dismissed the case. The trial court found that Meyer

could mine tract 3 as a legal nonconforming use under both the 1962 McHenry County zoning ordinance and a 1980 permit issued by the Department of Mines and Minerals in accordance with the provisions of the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1979, ch. 96¹/₂, par. 4501 *et seq.* (now 225 ILCS 715/1 *et seq.* (West 1994))).

## DISCUSSION

There are four principal issues on appeal: (1) whether Meyer may mine tract 3 as a legal nonconforming use under the 1962 McHenry County zoning ordinance; (2) whether Meyer may mine tract 3 as a legal nonconforming use under the 1980 permit issued by the Department of Mines and Minerals; (3) whether Meyer has a constitutional right to mine tract 3; and (4) whether the trial court abused its discretion in denying plaintiffs' request for discovery pursuant to Supreme Court Rule 191(b) (134 Ill. 2d R. 191(b)).

■ Before turning to the merits of the case, we note that this is an appeal from orders granting defendants' motions for involuntary dismissal under section 2—619(a)(9) of the Code. Section 2—619(a)(9) permits dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (735 ILCS 5/2—619(a)(9) (West 1994).) An "affirmative matter" is any defense other than a negation of the essential allegations of the plaintiff's cause of action. (*Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 115.) A section 2—619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action. (*Kedzie*, 156 Ill. 2d at 115.) We review an order granting a section 2—619(a)(9) motion *de novo*, considering whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. (*Kedzie*, 156 Ill. 2d at 116-17.) With these standards in mind, we turn to the merits of the case.

The first issue on appeal is whether Meyer may mine tract 3 as a legal nonconforming use under the 1962 McHenry County zoning ordinance. Relying principally on *County of Du Page v. Elmhurst-Chicago Stone Co.* (1960), 18 Ill. 2d 479, defendants maintain that Meyer may mine tract 3 as a legal nonconforming use because its gravel operation was a permitted use under the 1962 McHenry County zoning ordinance. Plaintiffs respond that *Elmhurst-Chicago Stone Co.* is distinguishable from the case at bar, or, alternatively, that Meyer waived and abandoned its right to mine tract 3.

■ "A legal nonconforming use is a nonpermitted use under currently applicable zoning ordinances which predates the applicable

zoning ordinance and is legalized on that basis." (*Littlejohn v. City of North Chicago* (1994), 259 Ill. App. 3d 713, 720; see also *Village of Burr Ridge v. Elia* (1978), 65 Ill. App. 3d 827, 829; *Village of Lake Bluff v. Horne* (1960), 24 Ill. App. 2d 343, 352.) A use which was not lawful at its inception is not a legal nonconforming use and thus cannot be protected from elimination for violation of present zoning ordinances. *Welch v. City of Evanston* (1980), 87 Ill. App. 3d 1017, 1022; *Elia*, 65 Ill. App. 3d at 829.

■ The facts of each particular case ultimately determine whether an owner is entitled to the protection of a legal nonconforming use. (*Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484.) Generally, however, an owner is entitled to the protection of a legal nonconforming use if the property is in actual use, as distinguished from a merely contemplated use, when the zoning restriction becomes effective. (*Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484.) Nevertheless, the rule that an owner is entitled to the protection of a legal nonconforming use only if the property is in actual use when the zoning restriction becomes effective is not absolute. (See *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484; *County of Du Page v. Gary-Wheaton Bank* (1963), 42 Ill. App. 2d 299, 303-06.) One noteworthy exception to this rule is the situation where a mining company purchases a tract of land laden with mineral deposits as inventory for its mining business. See *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484; *Gary-Wheaton Bank*, 42 Ill. App. 2d at 303-06.

*Elmhurst-Chicago Stone Co.* is particularly instructive. In that case, a mining company was operating an open-pit limestone quarry when, in 1924, it purchased a parcel of property (the subject tract) across the street from the quarry because of its limestone reserves. To connect the quarry with the subject tract, the company constructed switch tracks across the street. From 1924 to 1957, the company did not remove any limestone from the subject tract. However, the company stockpiled limestone on the subject tract, farmed part of the subject tract for weed control, and maintained and used the switch tracks for various tasks. *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 481-83.

In 1957, Du Page County enacted an ordinance prohibiting any use of land in a manufacturing district which was within 200 feet of a residential district. Soon thereafter, the company began excavating operations on the subject tract which were in violation of this ordinance. Du Page County, the Elmhurst Park District, and several individual property owners brought suit seeking to enjoin the company from violating the ordinance. The trial court granted the injunction, and the company appealed directly to the supreme court.

On appeal, the company argued that the subject tract "was purchased and used as part of its quarry operation long before passage of the ordinance, and that such use of the tract in its entirety [was] a legal nonconforming use." *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 482.

The supreme court concluded that the company's use of the subject tract constituted a legal nonconforming use. In reaching this conclusion the court stated:

> "This is not the usual case of a business conducted within buildings, nor is the land held merely as a site or location whereon the enterprise can be conducted indefinitely with existing facilities. In a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. We think that in cases of a diminishing asset the enterprise is 'using' all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously it cannot operate over an entire tract at once." (*Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484-85.)

Based on this reasoning, the court concluded that the trial court erred in ordering injunctive relief because the subject tract "in its entirety was devoted to a nonconforming use." (*Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 485.) According to the court, the subject tract was "a part of a single enterprise or business, in continuous operation at the time the ordinance became effective and for a long period of time prior thereto." (*Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 485.) Under *Elmhurst-Chicago Stone Co.*, therefore, a mining company which purchases property for its materials is entitled to the protection of a legal nonconforming use for that property provided the property constitutes an integral part of the mining operations at the time the zoning restriction becomes effective. See *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484-85.

■ Applying the principles announced in *Elmhurst-Chicago Stone Co.* to the case at bar, we conclude that tract 3 is an integral part of Meyer's mining operations and that Meyer may mine tract 3 as a legal nonconforming use. Plaintiffs cite no evidence in the record to suggest that tracts 3 and 4 effectively constitute separate mines. Rather, the unrefuted evidence demonstrates that Meyer planned and operated these tracts as part of a single enterprise devoted to

one goal: mining gravel. Like the company in *Elmhurst-Chicago Stone Co.*, Meyer purchased tract 3 for future mining operations in order to extend the life of its mining and processing operations. Like the construction of the switch tracks in *Elmhurst-Chicago Stone Co.*, Meyer constructed a tunnel under Klasen Road connecting tract 3 to tract 4. Moreover, tract 4 has been mined since 1970 or 1971 and is connected to the processing plant located on tract 1 by an underground tunnel. Given these circumstances, we conclude that tract 3 is part of a single enterprise which in its entirety has been devoted to a nonconforming use. Tract 3 is thus an integral part of Meyer's mining operations. As such, Meyer may mine it as a legal nonconforming use. See *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484-85.

Plaintiffs attempt to distinguish *Elmhurst-Chicago Stone Co.* from the present case on a multitude of grounds. According to plaintiffs, *Elmhurst-Chicago Stone Co.* is distinguishable because: (1) in *Elmhurst-Chicago Stone Co.*, the subject property was purchased and used before the zoning change, whereas here Meyer never used tract 3 in conjunction with the mining operations conducted on tracts 1, 2, and 4; (2) in *Elmhurst-Chicago Stone Co.*, the use of the property was permitted prior to the zoning change, whereas here Meyer never had a legal right to mine tract 3; and (3) this case presents issues relating to the health, safety, and welfare of the surrounding community not considered in *Elmhurst-Chicago Stone Co.*

Plaintiffs first attempt to distinguish *Elmhurst-Chicago Stone Co.* on the ground that in that case the subject property was purchased and used before the zoning change, whereas here Meyer never used tract 3 in conjunction with the mining operations conducted on tracts 1, 2, and 4. Plaintiffs reason that tract 3 is not part of Meyer's gravel operation and thus is not a nonconforming use, because Meyer never used it to stockpile materials or "for any type of asphalt or cement plant."

We disagree with plaintiffs' reasoning. It is irrelevant whether Meyer actively mined or used tract 3. As *Elmhurst-Chicago Stone Co.* explains, the ordinary concept of "use" does not apply where the asset is a tract of property purchased for future mining operations— the very nature of this property requires it to be left vacant or devoted to incidental uses until the minerals are needed. (See 18 Ill. 2d at 484-85.) If the property is an integral part of the mining operation, it may be mined as a nonconforming use. (See *Elmhurst-Chicago Stone Co.*, 18 Ill. 2d at 484-85.) As we discussed above, tract 3 is an integral part of Meyer's mining operations, notwithstanding the fact that tract 3 has never been actively mined, since tracts 3 and 4 are part of one mine and have been both devoted in their entirety to a nonconforming use.

Plaintiffs next attempt to distinguish *Elmhurst-Chicago Stone Co.* on the ground that there there the use of the property was permitted prior to the zoning change, whereas here Meyer never had a legal right to mine tract 3. When Meyer purchased tract 3 in 1971, the 1962 McHenry County zoning ordinance classified tract 3 as an "F" farming district. The uses permitted in an "F" farming district under the ordinance were:

"Mining, loading and hauling of sand, gravel, humus, black dirt, or other aggregate, but not including any screening, crushing, washing, or storage equipment or structures excepting as may be specifically authorized as a variation for a limited period." (McHenry County Zoning Ordinance § 8(J) (1962).)

Plaintiffs apparently maintain that, pursuant to the October 19, 1993, ordinances, Meyer has engaged in the crushing of stones on tract 3, an activity which was not permitted under the 1962 ordinance. Thus, according to plaintiffs, Meyer's present use of tract 3 is not a *legal* nonconforming use.

Again, we disagree. Section 3 of the 1962 McHenry County zoning ordinance provides that "[u]nless otherwise prohibited or restricted, a permitted use also allows uses, buildings and structures incidental thereto if located on the same site or building plot." (McHenry County Zoning Ordinance § 3(3) (1962).) Although the ordinance does not define "incidental," Illinois case law interprets an incidental use as being "anything usually connected with the principal use, something which is necessary, appertaining to, or depending upon the principal use." *County of Du Page v. K-Five Construction Corp.* (1994), 267 Ill. App. 3d 266, 271; see also *Peterson v. City of Highland Park* (1987), 153 Ill. App. 3d 826, 839; *County of Lake v. La Salle National Bank* (1979), 76 Ill. App. 3d 179, 181-82.

Applying the foregoing interpretation to the instant case, we conclude, given the record before us, that Meyer's use of the on-site crusher constitutes an incidental use to the permitted use of mining, loading, and hauling the gravel. Initially, we observe that plaintiffs neither cited any evidence in the record disputing the nature of the on-site crusher nor sought leave to conduct discovery on this matter. Moreover, the record before us reveals that the crushing process at the processing plant is not the same process as that used at the on-site crusher but rather is necessary to mine, load, and haul the gravel. Meyer employs a conveyor/tunnel system for loading and hauling gravel from tracts 3 and 4 to the processing plant. This system requires a balanced, continuous flow of gravel fed by a feeder onto the conveyor to keep the tracks running and the conveyor balanced. Since 3% to 5% of the gravel is too large to ride the conveyor or to

go through the feeder, it is simultaneously crushed within the feeder as it is loaded onto the conveyor. Once the gravel reaches the processing plant, the gravel is crushed to the necessary size, screened, and washed. Thus, although "crushing" is not generally a permitted use under the ordinance, the on-site crushing which has occurred since the 1970s is merely an incidental use which allows Meyer to engage in the permitted uses of mining, loading, and hauling the gravel to the processing plant located on tract 1. As such, Meyer's present use of tract 3 is a legal nonconforming use.

Plaintiffs also seek to distinguish *Elmhurst-Chicago Stone Co.* on the ground that this case presents issues relating to the health, safety, and welfare of the surrounding community which were not considered in *Elmhurst-Chicago Stone Co.* Plaintiffs argue (1) they had no reason to know when they moved into their homes that tract 3 would be transformed into a gravel pit, whereas the individuals in *Elmhurst-Chicago Stone Co.* purchased their homes in an area with known heavy industrial usage; (2) Meyer's mining operations on tract 3 may contaminate well No. 10; (3) Meyer may not be able to comply with applicable standards for noise and fugitive dust levels; and (4) the value of the homeowners' residences will be drastically reduced. Therefore, according to plaintiffs, the two cases implicate different issues relating to the health, safety, and welfare of the surrounding community.

*Elmhurst-Chicago Stone Co.* is not distinguishable on this basis. *Elmhurst-Chicago Stone Co.* is silent as to whether the individual homeowners in that case purchased their homes knowing that the subject tract would be eventually mined for its limestone deposits. Although it is possible, as plaintiffs suggest, that the individual homeowners in *Elmhurst-Chicago Stone Co.* purchased their homes in an area with known heavy industrial usage, it is equally possible that those homeowners purchased their homes on the belief that the subject tract would not be mined. Without further guidance from *Elmhurst-Chicago Stone Co.*, we decline to distinguish it on this basis.

Nor do we believe that plaintiffs' other allegations regarding the health, safety, and welfare of the surrounding community are sufficient to reverse the trial court. In their complaints, plaintiffs alleged that gravel mining on tract 3 would "permanently increase the potential for contamination of the ground water which provides the water supply of [Cary's] Well No. 10." Plaintiffs also alleged that Meyer may not be able to comply with applicable standards for noise and fugitive dust levels and that mining on tract 3 will drastically reduce the value of the homeowners' residence. However, these allegations constitute conclusions of fact unsupported by specific facts,

which we cannot accept as true on a section 2—619(a)(9) motion to dismiss. (See *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.* (1994), 261 Ill. App. 3d 338, 343 (trial court should grant section 2—619 motion if it finds no disputed issues of fact and concludes that "the affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, unsupported fact").) Accordingly, we are bound to follow the principles announced in *Elmhurst-Chicago Stone Co.* and affirm the trial court.

Alternatively, plaintiffs argue that in the event we find *Elmhurst-Chicago Stone Co.* controlling, we should overrule or modify it and "strike a balance" between Meyer's and plaintiffs' interests by adopting the approaches taken by other jurisdictions (see *Dolomite Products Co. v. Kipers* (1965), 23 A.D.2d 339, 260 N.Y.S.2d 918; *Davis v. Miller* (1955), 163 Ohio St. 91, 126 N.E.2d 49). Without addressing these approaches, we note that only our supreme court can overrule or modify its previous decisions; as the appellate court, we do not have the authority to abandon supreme court precedent. (*Miller v. Gupta* (1995), 275 Ill. App. 3d 539, 546.) Because we believe that *Elmhurst-Chicago Stone Co.* is directly on point, we decline plaintiffs' invitation to overrule or modify it.

Plaintiffs alternatively argue that, even if Meyer had a legal nonconforming use permitting it to mine tract 3, Meyer nevertheless both waived and abandoned that use by its subsequent conduct. We will address the issues of waiver and abandonment separately.

Plaintiffs argue that Meyer waived its legal nonconforming use to mine tract 3 when it submitted a petition in 1977 to the McHenry County Zoning Board. This petition sought a special use permit which would allow Meyer to use tract 3 "for a sand and gravel pit with stripping of top soil including crushing, grading, washing and loading equipment all pursuant to a complete plan for reclamation of the subject area." The petition failed to mention whether Meyer could mine tract 3 as a legal nonconforming use. Plaintiffs reason that the failure to mention the legal nonconforming use waived Meyer's right to raise this issue in the present proceeding.

Plaintiffs' reasoning is specious and unpersuasive. Tract 3 was classified under the 1962 McHenry County zoning ordinance as an "F" farming district. Under this ordinance, Meyer could mine, load, and haul gravel, but it could not crush or wash gravel except as authorized. (McHenry County Zoning Ordinance § 8(J) (1962).) Meyer's petition in 1977 to the McHenry County Zoning Board merely sought this authorization by requesting a special use permit to crush, grade, and wash gravel on tract 3. Based on these circumstances, Meyer did

not waive its right to mine tract 3 according to the uses permitted under the 1962 McHenry County zoning ordinance simply because it sought authorization in 1977 to perform additional activities on tract 3.

Moreover, plaintiffs' reliance on *Speck v. Zoning Board of Appeals* (1980), 93 Ill. App. 3d 460, *rev'd on other grounds* (1982), 89 Ill. 2d 482, for the proposition that a party's failure to raise the issue of a legal nonconforming use before a zoning board permanently waives that party's right to claim a legal nonconforming use, is misplaced. *Speck* and the case it cites as authority for its position (see *Bethune Plaza, Inc. v. Department of Public Aid* (1980), 90 Ill. App. 3d 1133) merely apply the well-established rule that the failure to raise an issue before a trial court or zoning board constitutes a waiver of that issue on direct appeal. (See *Speck*, 93 Ill. App. 3d at 466; *Bethune Plaza, Inc.*, 90 Ill. App. 3d at 1140 n.2.) We do not read *Speck* to hold that the failure to raise the issue of a legal nonconforming use before a zoning board constitutes a permanent waiver of that issue. As such, *Speck* does not require us to hold that Meyer waived its right to claim that it could mine tract 3 as a legal nonconforming use.

Plaintiffs also claim that Meyer abandoned its legal nonconforming use because Meyer started and then stopped mining on tract 3 on two separate occasions: from 1977 to 1979 and from 1989 to 1990. A claim of abandonment of a nonconforming use must be shown by more than a mere cessation of use; such a claim also requires that an intent to abandon the use be demonstrated. (*K-Five Construction Corp.*, 267 Ill. App. 3d at 272.) However, before a party may abandon a nonconforming use to mine certain property, that party must have actually utilized the nonconforming use. See *K-Five Construction Corp.*, 267 Ill. App. 3d at 272.

In the present case, Meyer has not utilized its legal nonconforming use to mine tract 3. Contrary to plaintiffs' claims, Meyer has never mined tract 3. The record reveals the following: in 1977, Meyer constructed a nine-foot-diameter tunnel under Klasen Road to connect tract 3 to tract 4; in 1978 and 1979, some materials were extracted and stripped from tract 3 to construct a berm along a portion of the western boundary of tract 3; and in 1989 and 1990, tract 3 was stripped of overburden in order to construct a line-of-sight berm along tract 3's east boundary. These activities do not demonstrate that Meyer "mined" tract 3 as contemplated under the 1962 McHenry County zoning ordinance. Accordingly, because Meyer never mined tract 3 as a legal nonconforming use, it could not have abandoned its right to mine tract 3 as a legal nonconforming use. See *K-Five Construction Corp.*, 267 Ill. App. 3d at 272.

758

Since we conclude that Meyer may mine tract 3 as a legal nonconforming use under the 1962 McHenry County zoning ordinance, and affirm on that basis, we need not address whether Meyer may mine tract 3 as a legal nonconforming use under the 1980 permit issued by the Department of Mines and Minerals, or whether Meyer has a constitutional right to mine tract 3. The only issue remaining on appeal, therefore, is whether the trial court abused its discretion in denying plaintiffs' request for discovery pursuant to Supreme Court Rule 191(b) (Rule 191(b)) (134 Ill. 2d R. 191(b)).

For the foregoing reasons, the judgments of the circuit court of McHenry County are affirmed. Meyer's request for sanctions is denied.

Affirmed; request for sanctions denied.

COLWELL and THOMAS, JJ., concur.