RICHARD M. DALEY, Mayor and Local Liquor Control Commissioner, *et al.*, Plaintiffs-Appellants, v. AMERICAN DRUG STORES, d/b/a Osco Drug, *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—99—1125

Opinion filed April 14, 2000.—Rehearing denied May 19, 2000.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence E. Rosenthal, Benna Ruth Solomon, and Valerie Quinn, Assistant Corporation Counsel, of counsel), for appellants.

Siegel Moses Schoenstadt & Webster, P.C., of Chicago (Morton Siegel, James L. Webster, and Harlan C. Powell, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiffs Richard M. Daley, mayor and local liquor control commissioner, and Winston L. Mardis, director of the Mayor's License Commission, appeal an order of the circuit court affirming the License Appeal Commission's decision to grant a package goods liquor license

to the Osco drug store located at 1425 West Morse Avenue (the Morse Avenue store). On appeal, plaintiffs argue that section 4—60—23 of the Chicago Municipal Code (Chicago Municipal Code § 4—60—023 (1995)) specifically prohibits the issuance of new liquor licenses in the area encompassing the Morse Avenue store. We reverse.

Osco Drug, Inc. (Osco), and Jewel Food Stores, Inc. (Jewel), are wholly owned subsidiaries of American Drug Stores, Inc. (American). In 1963, American opened a Jewel store at 1425 West Morse Avenue. The Jewel store remained in operation there until it closed in 1993, leaving behind a vacant building.

In June 1993, American decided to tear down the empty building and build an Osco drug store on the site. In January 1995, American opened the Morse Avenue property as an Osco store.

Osco subsequently applied for a package goods liquor license for its Morse Avenue store. The Local Liquor Control Commission denied Osco's application because it determined that the issuance of a liquor license for the Morse Avenue store would have a deleterious impact on the health, safety, and welfare of the surrounding community and would tend to create a law enforcement problem.

Osco appealed to the License Appeal Commission, which conducted a trial *de novo* pursuant to section 7—9 of the Liquor Control Act of 1934 (235 ILCS 5/7—9 (West 1992)). The License Appeal Commission ultimately reversed the denial of Osco's application, finding that the issuance of the package goods liquor license would provide benefits to the community far outweighing any deleterious impact. On administrative review, the circuit court affirmed the License Appeal Commission. Plaintiffs filed this timely appeal.

On administrative review, we review the administrative agency's decision and not the circuit court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207 (1999). The administrative agency's factual findings are deemed *prima facie* true and are reversed only if against the manifest weight of the evidence. *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649, 652-53 (1996). The agency's conclusions on questions of law are not entitled to deference and are reviewed *de novo*. *XL Disposal Corp.*, 304 Ill. App. 3d at 207.

Plaintiffs argue that the License Appeal Commission erred by granting Osco's application for a new package goods liquor license for its Morse Avenue store. In support, plaintiffs cite section 4—60—023 of the Chicago Municipal Code, which establishes a moratorium on new liquor licenses in the area encompassing the Morse Avenue store. See Chicago Municipal Code § 4—60—023 (1995).

Osco does not dispute that its Morse Avenue store is located in a

moratorium area. However, Osco argues that plaintiffs waived this issue by failing to raise it before the License Appeal Commission. Osco argues that it is unfairly surprised, and that its due process rights are violated, by plaintiffs' attempt to raise the moratorium issue for the first time in this appeal.

■ We find no waiver, unfair surprise, or due process violation, as the record indicates that both parties addressed the moratorium issue during the trial before the License Appeal Commission. For example, during opening statements before the License Appeal Commission, plaintiffs stated that the Morse Avenue store is located in a moratorium area. Osco responded during its opening statement that it is subject to an exception to the moratorium. William J. Griffin, an attorney who represented the Associated Beer Distributors and Dominick's on the license moratorium issue, testified for Osco regarding the exception to the moratorium. Both parties referred to the moratorium during closing arguments, and Osco filed a posthearing brief arguing that it falls within the moratorium exception. Osco never argued, during the trial or in its posttrial brief, that it had been surprised or prejudiced by the discussion of the moratorium issue. Thus, the record indicates that the moratorium issue was raised before the License Appeal Commission and that Osco had a meaningful opportunity to be heard on the issue in conformity with its due process rights. See *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 1009 (1999) (the essence of procedural due process is notice and the meaningful opportunity to be heard). Accordingly, the moratorium issue has been properly preserved for review.

Osco argues that *Local Liquor Control Comm'n v. Illinois Liquor Control Comm'n*, 59 Ill. App. 3d 1 (1978), compels a different result. There, the appellate court found that plaintiff waived an issue by failing to argue it at the hearing before the commission and by failing to raise it within the complaint for administrative review. Here, the moratorium issue was raised before the License Appeal Commission and in the complaint for administrative review. Therefore, we address the issue on its merits.

Both sides agree that section 4—60—023 of the Chicago Municipal Code establishes a moratorium on new liquor licenses in the area encompassing the Morse Avenue store. Osco argues, though, that it falls within an exception to the moratorium found in section 4—60—024 of the Chicago Municipal Code.

Resolution of this issue requires us to construe section 4—60—024. The same rules used in construing statutes are also applied when interpreting the meaning of a municipal ordinance. *Nolan v. Hillard*, 309 Ill. App. 3d 129, 143 (1999). The primary aim is to ascertain and

give effect to the drafter's intent. *Nolan*, 309 Ill. App. 3d at 143. The best indicator of this intent is the language used in the ordinance, which is to be given its plain and ordinary meaning. *Nolan*, 309 Ill. App. 3d at 143.

■ Section 4—60—024 states:

"Nothing \*\*\* prevents or prohibits the issuance of an additional license to allow the continued operation of an *existing* business within [a moratorium area], if the license is of the same type and if the successor licensee is any of the following \*\*\* *(e) any other person who is acquiring the licensed business by purchase.* \*\*\* The applicant for a new license under subsection (e) of this section shall bear the burden of proof of eligibility for the new license." (Emphasis added.) Chicago Municipal Code § 4—60—024 (1995).

Section 4—60—024 further states that if one-half of the buildings located within 500 feet of the licensed premises are used for residence or apartment house purposes, then the applicant under subsection (e) must obtain the consent of 51% of the registered voters who live within the 500-foot area. However, if the licensee's business meets certain square footage and gross revenue requirements, "the requirements of consent of voters and proof of consent shall not apply." Chicago Municipal Code § 4—60—024 (1995).

Osco argues that its Morse Avenue store meets the square footage and gross revenue requirements and, thus, that it need not show proof of voter consent. However, to fall within the moratorium exception, Osco still must prove that it "purchase[d]" the Morse Avenue store from an "existing \*\*\* licensed business." Chicago Municipal Code § 4—60—024 (1995). Here, there was no existing business at the time Osco took over the Morse Avenue store; the store had been vacated by Jewel approximately 18 months earlier. Nor did Osco "purchase" the store; rather, after Jewel vacated the store, American (Osco and Jewel's parent company) tore down nearly the entire empty building and built an Osco. Thus, Osco's Morse Avenue store does not fall within section 4—60—024's exception to the moratorium.

Therefore, we reverse the judgment of the circuit court and the License Appeal Commission's order granting a package goods liquor license for the Osco Morse Avenue store.

Reversed.

ZWICK, P.J., and CAMPBELL, J., concur.