WARREN J. WRIGHT, d/b/a Lake Street Spa and Spa 64, *et al.*, Plaintiffs and Counterdefendants-Appellants, v. THE COUNTY OF DU PAGE, Defendant and Counterplaintiff-Appellee.

Second District No. 2—99—0743

Opinion filed September 13, 2000.

J.D. Obenberger and Reed C. Lee, both of J.D. Obenberger & Associates, of Chicago, for appellants.

Joseph E. Birkett, State's Attorney, of Wheaton (Ellen L. Champagne, Kevin D. Mack, and Robert G. Rybica, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs-counterdefendants, Warren Wright, d/b/a Lake Street Spa and Spa 64; Lake Street Spa, Inc.; Thomas Bogaert, d/b/a as Spa 64; and Spa 64, Inc. (collectively the Spas), appeal from the judgment of the circuit court of Du Page County permanently restraining and enjoining the Spas from using the property at their respective locations as adult businesses. Defendant-counterplaintiff, the County of Du Page (County), had filed a second amended counterclaim seeking such relief.

On appeal the Spas contend that (1) they lawfully located under the zoning provisions in effect at the time they opened and therefore are entitled to continue to operate as prior nonconforming uses; (2) the trial court erred in determining that the activity conducted at the Spas was not protected under the first amendment free speech clause (U.S. Const., amend. I); and (3) the trial court erred in upholding the constitutionality of the County's adult business use zoning provisions and in enjoining the operation of any adult business use at the Spas' respective locations, as the provisions were overly restrictive and a prior restraint on freedom of speech.

The Spas commenced their operations in 1996 offering services that included touching, rubbing, and application of pressure by female

employees to the bodies of paying customers. The Spas charged various prices for their massages depending on the duration of the visit and the state of undress of the employee. The massages were not performed for therapeutic purposes. Prior to and during 1996 and continuing to the present time, the Du Page County Zoning Ordinance (Du Page County Zoning Ordinance (1997)) provided for adult uses in light industrial districts (I—1) and in general industrial districts (I—2).

Lake Street Spa is located at 24W464 Lake Street in unincorporated Du Page County in a local business district (B—1). The north side of the spa's property is adjacent to property that is zoned residential. Spa 64 is located at 21W500 North Avenue in unincorporated Du Page County in a general business district (B—2). The spa is about 300 feet from a single-family residence and 200 feet from a multiple-family residence. Neither the surrounding zoning classification nor the residential characters where the Spas are located have changed since the commencement of their operations.

Initially, litigation began when the County filed an administrative complaint against the Spas for violations of the Du Page County massage establishment license ordinance. The Spas then filed a complaint in the circuit court seeking an injunction to preclude an administrative hearing. The County withdrew its administrative complaint and filed a counterclaim, bringing, essentially, the same cause of action as the cause in the administrative complaint. The County sought injunctive relief to enjoin the Spas from conducting massage establishments at their respective locations until each spa obtained a massage establishment license. In opposition to the County's request, the Spas argued that, because the massages given at their establishments were purely recreational and not therapeutic, they were not subject to regulation by the massage establishment license ordinance and, therefore, could not be operating in violation of that ordinance. The parties had previously entered into a stipulation stating that the Spas did not perform therapeutic massages at their establishments but, rather, "erotic entertainment performances." The trial court denied the County's request for injunctive relief.

Subsequently, the County filed a second amended counterclaim, seeking to have the Spas permanently enjoined from conducting their activities. The County contended that the Spas' use of their property constituted an adult use as defined in the Du Page County Zoning Ordinance (ordinance) and was permitted only in I—2 districts and conditionally permitted in I—1 districts. Additionally, the County contended that each use was illegal because it was being conducted within 500 feet of residential districts.

The Spas filed a second amended complaint, seeking a declaration that they could continue in business where they were located. The Spas alleged that, at the time they commenced their operations, they were specifically permitted to perform such activities under the ordinance and therefore enjoyed the protection afforded to a prior nonconforming use. The Spas reasoned that they were a permitted use because they were massage parlors. The Spas maintained that their business use qualified them as ''masseurs'' and that the ordinance expressly and specifically permitted masseurs to locate as permitted uses in B—1 and B—2 zoning districts. The Spas asserted that, if the ordinance was found to bar their uses where located, the Spas were otherwise protected by the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV) and section 4 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 4). Specifically, the Spas maintained that their activities constituted presumptively protected expression and that the ordinance was unconstitutional as overly restrictive or a prior restraint on free speech.

The County answered that, when the Spas opened for business in 1996, they were not permitted uses within the B—1 and B—2 districts where they located. As a result, the Spas could not enjoy the protection afforded a prior nonconforming use. The County also responded that the business of the Spas did not involve protected conduct pursuant to first amendment guarantees of free speech and, even if so protected, the ordinance was not constitutionally invalid as overly restrictive or a prior restraint on free speech.

The cause proceeded to trial. At trial Officer Dennis Schar of the Glendale Heights police department and Detective Mark DePino of the Du Page County sheriff's office testified regarding their undercover investigative visits to the Spas. The officers testified to conduct that was corporeal in nature and consisted of the methodical touching of each officer by a female employee while she was wearing nothing but a G-string. The officers were nude. Schar related that the woman who performed the massage on him told him that he could touch himself during the massage. Also, when she massaged his legs, back, and chest, she pressed her breasts against his body. DePino stated that his massage worker told him that he could touch her body, but not her ''private parts,'' while she was giving him the massage. Both Schar and DePino indicated that there was no performance or dance during the massages and any conversation, other than the female employees explaining to the officers what they were allowed to do during the massage, amounted to small talk.

April McLaughlin, the manager of Spa 64, described the massages as visual and auditory experiences that could include dancing and role

playing. According to McLaughlin, visual stimulation was provided by the completely mirrored and dimly lit massage rooms. Auditory stimulation was provided by sensual music and conversation. It was McLaughlin's testimony that the Spa employees often incorporated adult conversation during the sessions. McLaughlin acknowledged that the sign in the lobby of Spa 64 setting forth the prices for three different massages did not refer to the sessions as massage sessions but as "erotic encounters."

William Heniff, the zoning administration supervisor for the County, testified that the term "masseur" is not synonymous with the term "massage parlor," as the former is an occupation and the latter is a use on the premises. Heniff stated that, under the ordinance, a massage parlor offering nude or topless massages would be classified as an adult business use. Heniff based his classification both on the definition of "adult business use" in the ordinance and on the definition of "specified anatomical areas." Under the ordinance, an adult business use refers to any use of a substantial portion of property for an activity characterized by emphasis on matters relating to specified anatomical areas. "Specified anatomical areas" is defined in part as "[l]ess than completely or opaquely covered human genitals, pubic region, buttock, anus or female breasts below a point immediately above the top of the areola." Du Page County Zoning Ordinance § 37—3.2 (1997). Heniff related that an adult use of the sort being conducted at the Spas can be allowed as a conditional use in I—1 districts and a permitted use, as a matter of right, in I—2 districts. Heniff testified that, from their inceptions, the Spas constituted illegal uses at their locations in B—1 and B—2 districts. Heniff stated that neither spa ever applied for a conditional use.

According to Heniff, the 1986 amendment to the County's zoning ordinance allowed adult businesses to locate as permitted uses in I—2 districts and as conditional uses in I—1 districts. At that time, Heniff stated, the preamble to those regulations stated that the industrial districts represented "4.7% of the total unincorporated area of Du Page County." Heniff pointed out that in 1986 there were substantially more parcels available for adult business uses than in 1996. But, when the Spas opened, there were an adequate number of sites available for an adult business use both in I—2 and I—1 districts. Heniff related that in 1996 the restrictions as to the location of adult businesses were identical to the restrictions set forth in the 1986 amendment to the ordinance. Heniff specifically described and identified on a map depicting industrial-zoned districts in unincorporated Du Page County four sites that he had personally visited where adult businesses were permitted.

Heniff estimated that between 1986 and 1998 the industrial-zoned property in unincorporated Du Page County had decreased by 60% due to the annexation of that land by surrounding municipalities. Heniff explained that the County has no legal standing in municipal annexation proceedings and that, although land available for adult business uses was diminishing, the diminution was due to municipal annexation and not to the County's zoning ordinances.

Neil Renzi, a professional appraiser, testified that he was hired by the Spas to identify and inspect all I—1 and I—2 districts located in unincorporated Du Page County that contained land available for adult business uses. Renzi was to assess the sites to determine if they were commercially suitable, *i.e.*, assess the development costs, accessability, and compatibility of the sites with the proposed "generic commercial enterprise" that might be located at a specific site. Renzi defined generic commercial enterprises as bakeries, card shops, banks, grocery stores, and restaurants. According to him, adult nude massage parlors also constituted generic commercial enterprises. Renzi opined that generic commercial enterprises are incompatible with industrial lands in Du Page County. In his opinion no parcel of industrial land in unincorporated Du Page County, including any of the sites presented by the County, would be suitable for an adult business use or for relocating a generic commercial enterprise.

Joseph Abel, director of planning for the County from 1970-87 and developer of the first comprehensive plan for the County, testified that the County's planning authority is county-wide, *i.e.*, its land use plan applies to all of the incorporated as well as unincorporated land within the county. The County's zoning authority is restricted to the unincorporated areas. Presently, only 20% of the unincorporated areas in the county is left for development. Abel opined that by 2010 there will be no unincorporated land remaining for any sort of development, as municipalities will have annexed all of the remaining undeveloped or unincorporated areas. Abel acknowledged that the County has no standing in annexation proceedings and is notified of annexations after they have been accomplished.

Abel testified that adult uses were not discussed as part of the County's comprehensive plan and that they were not part of the planning program. The County deals with the distribution of adult business uses through its zoning authority and zoning process.

Based on his knowledge of certain areas and a spot survey of other areas, Abel opined that there are more than an adequate number of sites in unincorporated Du Page County in which adult businesses can operate. On a map depicting industrial-zoned properties in unincorporated areas of the county, Abel identified and described the sites he

had located in Downers Grove, Westmont, West Chicago, Lisle, and Addison. Three of the parcels were located in I—1 or I—2 districts within one-quarter to one-half mile from where Spa 64 opened in 1996. According to Abel, each of these sites could have served as a place for an adult business use. In determining whether these sites were suitable for adult business uses, Abel decided if the sites met zoning requirements, *i.e.*, whether each site was located in a proper district and whether it satisfied all district distancing or buffering requirements imposed on adult uses. Abel stated that, if he had done an inventory of every industrial site in the entire county, he would have located more sites for adult business uses than those he named as a result of his spot survey.

During trial the Spas moved to admit the stipulation entered into by the parties when the only issue was whether the Spas had violated the County's massage establishment license ordinance. The trial court denied the admission of the stipulation, ruling that the stipulation had been reached pursuant to a motion challenging the therapeutic massage ordinance (massage establishment license ordinance), a motion upon which the Spas had prevailed, and that the stipulation had no bearing on the present proceedings. The court found that it was "beyond the stretch of any logic that the parties intended to bind themselves by this stipulation" on the trial of the County's second amended counterclaim, which was not filed until after the stipulation had been reached.

Following trial, the court found that the evidence clearly established that the purpose or activity for which the Spas were designed or intended or for which they were maintained and occupied constituted an adult use because the Spas' use involved an activity distinguished and characterized by emphasis on matters relating to specific sexual activities and specified anatomical areas as defined in the ordinance. Such an adult use was not a permitted use in B—1 and B—2 districts. The court concluded that the Spas' use of their property was permitted only in districts designated by the ordinance as general industrial, or I—2, and conditionally permitted in areas designated as light industrial, or I—1.

As to the Spas' argument that their adult business use was protected by first amendment guarantees regarding freedom of speech, the court found that the facts conclusively established that the Spas' adult business activity did not constitute speech or even expressive conduct. The court determined that no dancing or performance of any nature occurred during the massages. Rather, the Spas' adult business use involved methodical touching of the male patron by the female employee while she was partially or completely nude. According to the

court, the evidence was overwhelming that the Spas' business was primarily "a physical, sensual encounter of a sexual nature" between the Spas' employees and their customers and was "devoid of any element of expression, performance, or communication."

Even though the court determined that the Spas' adult business use was not protected expression, the court considered, as a cautionary measure, the Spas' theory that the ordinance was unconstitutional as overly restrictive and a prior restraint on freedom of speech. In this regard, the court concluded that the ordinance was constitutional and not overly restrictive because it furthered an important or substantial governmental interest in avoiding the adverse effects of adult business uses on surrounding land. According to the court, this governmental interest was unrelated to the suppression of free expression because it regulated adult business uses to minimize their deleterious effects on other property and to maximize compatibility of other uses. The ordinance's requirement that adult business uses be located in specific areas of the county constituted no greater restriction than that which was essential to the furtherance of the governmental interest.

The court further determined that, even if the Spas' property were to be afforded first amendment protections, the evidence clearly established that the regulations of the ordinance were content-neutral time, place, and manner regulations designed to serve a substantial governmental interest and did not unreasonably limit alternative avenues of communication.

Additionally, the court found that, because the ordinance did not impose any significantly different requirements on conditional use permit applications for adult uses in I—1 districts from those imposed on other businesses seeking such relief, the ordinance did not impose an unconstitutional prior restraint.

The court ordered that the Spas were to be permanently restrained and enjoined from using the property at their locations as adult businesses.

Before considering the issues in this case, we address the Spas' use of numerous footnotes throughout their original brief and reply brief. Supreme Court Rule 341(a) provides that "[f]ootnotes, if any, shall be used sparingly." 177 Ill. 2d. R. 341(a). Additionally, Rule 344(b) discourages the use of footnotes in briefs. 155 Ill. 2d R. 344(b). All of the Spas' footnotes are single spaced and many contain substantive argument that should be presented in the body of the briefs. Their use of footnotes cannot be characterized as "sparing." Moreover, we note that, had the footnotes been integrated into the body of the Spas' original brief and reply brief, the length of those briefs, which are 68 pages and 26 pages, respectively, would have violated the page limitation of Rule 341(a). See 177 Ill. 2d R. 341(a).

As we have previously stated in *Kerger v. Board of Trustees of Community College District No. 502*, 295 Ill. App. 3d 272 (1997), "[a]dherence to the page limitations and guidelines for footnote usage is not an inconsequential matter," and parties who ignore the limitations and guidelines set forth in Rule 341(a) do so at their peril. 295 Ill. App. 3d at 275. Accordingly, on our own motion, we strike all of the footnotes from the Spas' briefs.

■ In their first contention the Spas argue that, under the zoning provisions in effect at the time they opened their establishments, their location in districts zoned B—1 and B—2 was lawful and, therefore, they are entitled to continue to operate as prior nonconforming uses. The County responds that from their inception the Spas were not permitted uses within the business districts where they were located as the zoning ordinance applicable at the time provided for adult business uses only in districts zoned I—1 and I—2.

The Spas base their argument on the fact that, at the time they began their operations, the ordinance provided that "[p]hysical culture and health services, masseurs and public baths" were permitted uses in B—1 and B—2 districts (Du Page County Zoning Ordinance §§ 37—8.1—1b, 37—8.2—1b (1997)). The Spas reason that they provide masseurs or masseuses within the meaning of the ordinance. The ordinance defines a masseuse or masseure as "[a]ny person who, for any kind of consideration, engages in the practice of massage." Du Page County Zoning Ordinance § 37—3.2 (1997). The Spas reason further that, because they give or offer massages by masseuses, they constitute "massage parlors" as defined in the ordinance. Section 37—3.2 of the ordinance defines "massage parlor" as follows:

> "Any massage parlor; turkish, steam, sauna or other bath-house; magnetic healing institute room; place; establishment; or institution where Massage is given or offered by a Masseur or Masseuse." Du Page County Zoning Ordinance § 37—3.2 (1997).

However, under the ordinance, a massage parlor constitutes an adult business use. The ordinance defines an adult business use in relevant part as follows:

> "The use of property for the operation of a Massage Parlor and/or Bathhouse, Massage School, or any use of which a significant or substantial portion involves an activity distinguished or characterized by its emphasis on matters depicting, describing, or relating to *** Specified Anatomical Areas." Du Page County Zoning Ordinance § 37—3.2 (1997).

"Specified Anatomical Areas" is defined, in relevant part, as "[l]ess than completely or opaquely covered human genitals, pubic region, buttock, anus or female breast below a point immediately above the top of the areola." Du Page County Zoning Ordinance § 37—3.2 (1997).

The Spas concede that their female employees routinely exposed specified anatomical areas as defined in the ordinance and that this fact led the County to consider the Spas adult business uses. But, they assert, as "massage parlors" offering masseurs or masseuses, the Spas were a "subset" or "subcategory" of adult business uses and certain subcategories were permitted uses in the business-zoned districts. Under the Spas' theory, they were permitted uses because the term "massage parlor" is synonymous with the term "masseur or masseuse." Because a masseur or masseuse was a permitted use in the business-zoned districts, the Spas maintain that they had a choice whether to locate in the industrial-zoned districts or the business-zoned districts. Having chosen the business-zoned districts, they were now entitled to operate as a prior nonconforming use.

Initially, we note that the Spas ignore the fact that, regardless of whether they were a "subcategory" of adult business uses, any adult business use was prohibited by the ordinance from locating within 500 feet of residential areas. Section 37—4.16—2 of the ordinance provides in relevant part:

"No adult business use, either as a permitted use or as a conditional use, shall be maintained: *** (2) within five hundred (500) feet of any of the following zoning districts as provided for under this Ordinance: R—1, R—2, R—3, R—4, R—5, R—6, and R—7 [which included both single-family and multiple-family residences]; (3) within five hundred (500) feet of a zoned residential district lying within a municipality ***." Du Page County Zoning Ordinance § 37—4.16—2 (1997).

Here, the evidence established that the Spas were in violation of section 37—4.16—2, as Spa 64 was located within 300 feet of a single-family residence and 200 feet from a multiple-family residence, and Lake Street Spa was adjacent to property zoned residential. Consequently, under section 37—4.16—2 alone, the Spas could not have located in their present locations.

As to the Spas' claim that they were permitted uses in business-zoned districts because they were establishments offering masseurs or masseuses, we find the evidence proved this claim meritless. William Heniff, the zoning administration supervisor for the County, testified that the term "masseurs" refers to an occupation whereas the term "massage parlor" refers to a use of property and that the two terms were not synonymous. It was Heniff's testimony that a person engaged in the practice of massage at a hospital or a health club could be considered a masseur or masseuse, and, therefore, the establishment where the massage was being given was independent of the activity itself. Heniff stated that the primary use of property determines what the use of the property is.

At any rate, the Spas could not prevail by claiming that because their employees were masseuses their massage parlors constituted permitted uses. Section 37—4.3—5 of the ordinance provides that, "[e]xcept as hereinafter provided, when a use is not specifically listed as a Permitted or Conditional use in any specific zoning district, such use shall be expressly prohibited." Du Page County Zoning Ordinance § 37—4.3—5 (1997). While "masseur" is listed as a permitted use in B—1 and B—2 districts, "massage parlor" is not listed as a permitted use or a conditional use in those districts. "Generally, a zoning ordinance that specifies numerous permissible uses and was intended to be specific with respect to such uses will be construed to not permit uses that are not specified in the ordinance." *Dottie's Dress Shop, Inc. v. Village of Lyons*, 313 Ill. App. 3d 70, 74 (2000). Because "massage parlor" is not specified as a permitted use in business-zoned districts and because the ordinance specifically prohibits any use in a specifically zoned district that is not listed as a permitted or conditional use in that district, the Spas' massage parlors do not constitute permitted uses in B—1 and B—2 districts.

The Spas point out in their brief that they never denied that the adult business use regulations applied to them. But they assert here that, because the provision listing masseurs as a permitted use in B—1 and B—2 districts also applied to them, they were entitled to choose whether they wanted to locate in the business zones or the industrial zones. Even if this assertion were true, the Spas still would not have been entitled to locate in the business zones. Section 37—4.1—2 of the ordinance provides:

> "Where, the conditions imposed by any provision of this Ordinance are either more restrictive or less restrictive than comparable conditions imposed by any other applicable statute, law, ordinance, regulation, or rule, the provision which is most restrictive or imposes the higher standards or requirements shall apply." Du Page County Zoning Ordinance § 37—4.1—2 (1997).

The provision pertaining to the location of adult business uses only in industrial zones (Du Page County Zoning Ordinance §§ 37—10.1—2v, 37—10.2—1c (1997)) is more restrictive and imposes higher standards or requirements than the provision pertaining to the location of masseurs in business zones (Du Page County Zoning Ordinance §§ 37—8.1—1b, 37—8.2—1b (1997)).

In the case of the regulation of adult business uses, the ordinance provides that the use is subject to the requirements of sections 37—4.16—1 and 37—4.16—2. Section 37—4.16—1 points out that, in developing and executing the sections regulating and limiting the location of adult business uses, recognition was given to the deleterious

and adverse effects such uses can have upon areas adjacent to them and to the need for controlling the location of these uses to eliminate such effects. Du Page County Zoning Ordinance § 37—4.16—1 (1997). Section 37—4.16—2 establishes specific distances that must be maintained between an adult business use and residential districts, churches, schools, libraries, parks or other publicly operated recreational facilities, and another adult business use. Du Page County Zoning Ordinance § 37—4.16—2 (1997). Conversely, the provision regulating the location of masseurs in business zones is not subject to any specific requirements. Because the Spas acknowledge that they were adult business uses and because the provision regulating the location of such uses is more restrictive than that pertaining to the location of masseurs, the adult business use regulation provision applies.

As to the services the Spas' employees offered, April McLaughlin, the manager of Spa 64, acknowledged that the sign in the lobby of the spa listing prices did not refer to the massage sessions as massages but as "erotic encounters." McLaughlin also acknowledged that the employees offered to perform the massages in various states of undress from lingerie to full nudity. Both DePino and Schar testified that the employee performing a massage on each of them wore nothing but a G-string. Schar also stated that, while the employee was applying pressure to his chest, back, and legs, she rubbed her breasts against him and pressed them up against his cheek.

Clearly, the evidence established that the business use of the Spas' establishments was for the operation of massage parlors that emphasized an activity distinguished and characterized by its emphasis on matters relating to specified anatomical areas. Consequently, under the ordinance, the Spas' use of their property constituted an adult business use and, as discussed above, that use was permitted only in areas designated I—2 or conditionally permitted in areas designated I—1.

A use that was not lawful at its inception does not constitute a legal nonconforming use and therefore cannot be protected from elimination for violation of present zoning ordinances. *Bainter v. Village of Algonquin*, 285 Ill. App. 3d 745, 751 (1996). Accordingly, because the adult business use restrictions and ordinance predated the opening of the Spas and were applicable to the Spas, their respective locations in business-zoned districts were not lawful at their inception and could not constitute legal nonconforming uses.

Next, the Spas contend that the trial court erred in determining that the activity conducted at their establishments was not protected under the first amendment free speech clause. The Spas assert that their adult business use involved activity, *i.e.*, "sexually oriented live

entertainment,'' which was afforded protection pursuant to first amendment guarantees of free speech. In reviewing judgments pertaining to first amendment guarantees of free expression, we conduct an independent examination of the whole record. *Boy Scouts v. Dale*, 530 U.S. 640, 648, 147 L. Ed. 2d 554, 563, 120 S. Ct. 2446, 2451 (2000). Our review, therefore, is *de novo.*

■ Initially, we agree with the County that no consideration should be given to the Spas' attempt to persuade this court to take into account a stipulation that the trial court refused to admit into evidence. In that stipulation the parties stipulated that the Spas' employees did not perform therapeutic massages but, instead, provided customers with an ''erotic entertainment performance.'' As the trial court pointed out in denying the admission of the stipulation, the stipulation was entered into at a time when the only issue that the parties were going to trial on was the applicability of the County's massage establishment license ordinance to the conduct taking place at the Spas and that the court had ruled in favor of the Spas on the issue.

Subsequent to that time, the County filed a second amended counterclaim and the Spas filed a second amended complaint. As the court correctly stated, the issue in the case then changed to whether the Spas' establishments constituted adult business uses under the zoning ordinance. Based on these facts, the court determined that it was illogical that the parties intended to bind themselves on the trial of the County's second amended counterclaim by a stipulation that was entered into prior to the filing of the second amended counterclaim. We agree and find it would have been patently unfair to allow the Spas to use a stipulation that was reached for the purpose of challenging the County's massage establishment license ordinance as evidence in defense of the County's second amended counterclaim, which dealt with a different issue.

A stipulation is an agreement by the parties regarding an issue before the court. *Dawdy v. Sample*, 178 Ill. App. 3d 118, 127 (1989). A court will not enforce a stipulation if it is unreasonable, the result of fraud, or violative of public policy. *American Pharmaseal v. TEC Systems*, 162 Ill. App. 3d 351, 355 (1987). The trial court has the discretion to determine the validity and reasonableness of a stipulation. *Kew v. Kew*, 198 Ill. App. 3d 61, 64 (1990). Based on the record before us, we find that the trial court did not abuse its discretion in determining that it was unreasonable to allow the stipulation in question into evidence on the trial of the County's second amended counterclaim and the Spas' second amended complaint.

■ In discussing what activity can be considered expression, the United States Supreme Court stated, in *dicta*, in *City of Dallas v. Stanglin*, 490 U.S. 19, 104 L. Ed. 2d 18, 109 S. Ct. 1591 (1989):

"It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." 490 U.S. at 25, 104 L. Ed. 2d at 25-26, 109 S. Ct. at 1595.

The Court has rejected the view that "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 20 L. Ed. 2d 672, 679, 88 S. Ct. 1673, 1678 (1968). But, the Court has also acknowledged that conduct or activity may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. State of Washington*, 418 U.S. 405, 409, 41 L. Ed. 2d 842, 846, 94 S. Ct. 2727, 2730 (1974). In determining whether a particular activity possesses "sufficient communicative elements to bring the First Amendment into play," the Court has asked whether " '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.' " *Texas v. Johnson*, 491 U.S. 397, 404, 105 L. Ed. 2d 342, 353, 109 S. Ct. 2533, 2539 (1989), quoting *Spence*, 418 U.S. at 410-11, 41 L. Ed. 2d at 847, 94 S. Ct. at 2730. In concluding that the activity at issue in *Spence* was a form of protected expression, the Court relied on the nature of the activity, combined with the factual context and environment in which it was undertaken. *Spence*, 418 U.S. at 409-10, 41 L. Ed. 2d at 846, 94 S. Ct. at 2730.

The Spas maintain that they offered massage services in connection with erotic conversation, dancing, and role playing, all of which were accompanied by music in dimly lit, mirror-lined rooms, and that this activity constituted a performance or show. According to the Spas, the performances held at their establishments were no different from nude performance dancing, which has been held protected on numerous occasions. See, *e.g.*, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 115 L. Ed. 2d 504, 111 S. Ct. 2456 (1991); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981). An important difference, however, between the instant case and those wherein nude dancing has been determined to be protected expressive conduct is that in the latter situation a performance did, in fact, occur. In one of the two establishments involved in *Barnes*, totally nude go-go dancers performed for customers in a bar while in the other establishment, a "bookstore," customers inserted coins in a mechanism which permitted them to observe nude and seminude dancers through glass panels. Similarly, in *Schad*, coin-operated mechanisms

allowed customers to watch dancers, usually nude, perform behind glass panels. The activity occurring at the Spas was not in any manner similar to that occurring in *Barnes* and *Schad*.

According to April McLaughlin, the manager of Lake Street Spa, the Spas provided a "visually as well as auditory [*sic*] soothing and relaxing massage." McLaughlin stated that visual stimulation was provided by the completely mirrored and dimly lit massage rooms while auditory stimulation was provided by sensual music and conversation. It was McLaughlin's testimony that the massages included "acting or role playing *** in the sense that the girls often danced." McLaughlin stated that a patron could choose, for an additional fee, to have the massage worker wear only lingerie, be topless, or appear totally nude. McLaughlin acknowledged that some patrons chose none of these clothing options and preferred to have the massage worker fully clothed.

Both Detective Mark DePino and Officer Dennis Schar, who visited the Spas, testified that at the time of their visits there was no dancing or any other kind of performance by the Spas' female employees. Rather, in each case, the employee gave the man a nude massage while she was wearing nothing but a G-string. According to DePino's and Schar's testimony, the activities in question consisted only of the physical touching and rubbing of their bodies combined with a small element of communication, which consisted mainly of small talk.

■ Based on the evidence presented, we conclude that the nature of the activity at the Spas and the environment in which it was undertaken amounted primarily, as the trial court found, to a "physical, sensual encounter of a sexual nature between the Spas' employees" and their patrons or customers. Providing a massage in a nude or partially nude state to enhance the sexual experience of a nude paying patron does not constitute expression that the first amendment protects. While no Illinois case has specifically reached this same conclusion, we find instructive a Wisconsin case that has determined that a "masseuse's actions in disrobing do not constitute 'speech' which the first amendment protects" (*City of Madison v. Schultz*, 98 Wis. 2d 188, 203, 295 N.W.2d 798, 805 (1980)). According to the Court of Appeals of Wisconsin, "[t]he only idea expressed by the masseuse was her willingness to take her clothes off to enhance the sexual experience of the paying patron." *Schultz*, 98 Wis. 2d at 203, 295 N.W.2d at 805. Such was also the situation in the present case.

The commercial activities at the Spas' establishments were of a physical and sexual nature occurring within the environment of a massage parlor. There was no intent to convey a particularized message. While there existed a "kernel of expression" in the activity that

occurred at the Spas, that "kernel" was not sufficient to bring the activity within the protection of the first amendment.

As the activities occurring at the spas do not constitute expression protected under the first amendment, we need not consider the Spas' assertion that the ordinance is unconstitutional as overly restrictive and a prior restraint on freedom of speech. Thus, for the reasons set forth, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS and THOMAS, JJ., concur.