No. 2--01--0775

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE CITY OF MARENGO, ) Appeal from the Circuit Court

) of McHenry County.

Plaintiff-Appellant and )

Cross-Appellee,  )

) No. 00--CH--316

v. )

)

WALTER POLLACK and NORTHWEST )

PALLET SUPPLY COMPANY,  )

) Honorable

Defendants-Appellees and ) Michael T. Caldwell,

Cross-Appellants.  ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, the City of Marengo, filed a complaint alleging that defendants, Walter Pollack and Northwest Pallet Supply Company (Northwest), were violating plaintiff's 1992 ordinance limiting defendants' outdoor storage space to 1,000 square feet.  Defendants' affirmative defenses alleged a legal nonconforming use and that plaintiff was barred by 
laches
 from enforcing the earlier ordinance, which limited the outdoor storage area to 10% of the lot size.  After a bench trial, the court found that defendants were entitled to continue using 10% of their property for outdoor storage.  The trial court rejected defendants' 
laches
 claim, however.  Plaintiff appeals and contends that, because defendants continually violated the earlier ordinance, their use of the property was not a 
legal
 nonconforming use.  Defendants cross-appeal and argue that the trial court erred in rejecting their 
laches
 defense.  We affirm.

The only witness during the trial was defendant Pollack.  His testimony, the exhibits, and stipulations revealed the following pertinent facts.  Pollack owns Northwest, which restores and sells wood pallets.  Pollack purchased the subject property in 1986 and shortly thereafter began operating the business from that location.  The total area of the property is 99,244 square feet.  The property currently has four buildings and at one point had a fifth building, which burned down.  One of the buildings was used to store pallets.  The neighboring properties contain a cemetery, railroad tracks, a rental business, and an athletic field owned by a church.

Defendants receive broken pallets and immediately repair them.  The repaired pallets are stored outside until they are loaded onto trucks and delivered to customers.  According to Pollack, the outdoor storage of pallets is essential to the business.

The original zoning ordinance was enacted in 1959 and reprinted in 1973 (1959 ordinance).  We note that sometime between 1973 and 1986 the 1959 ordinance was recodified.  According to the district map referenced in the 1959 ordinance, the subject property was zoned "D industrial," originally the only industrial classification.  One of the many permitted uses was "[i]ndustrial and manufacturing plants, where the operations are conducted in one or more buildings and not more than ten (10) per cent of the lot or tract is used for the open storage of products, materials or equipment."  Marengo Zoning Ordinance §27--602(15) (eff. September 22, 1959).  In 1975, the 1959 ordinance was amended to create the "D-1 light industrial" and the "D-2 industrial" classifications.  All property zoned "D" was automatically classified as D-2 until reclassified by the zoning board of appeals and the city council.  Marengo Zoning Code §150.60 (eff. October 13, 1975).  Defendants' property never was reclassified.  Accordingly, plaintiff claimed that, when defendants purchased the property in 1986, they were subject to the 10% limit, which was 9,924 square feet.

From 1986 until shortly before the trial, defendants used between 12,000 and 16,000 square feet of outdoor area to store the pallets.  The height of the pallet stacks ranged from 12 to 30 feet.  During the summer of 2000, the trial court entered an agreed judgment addressing various zoning issues.  The agreement called for defendants to reduce the height of the pallet stacks to make the property more aesthetically pleasing.  Defendant complied, and as a result the total outdoor storage area increased to 22,375 square feet.  A dispute arose over some aspects of the judgment, and the trial court vacated it.  If defendants resumed using higher stacks, the outdoor storage area would drop to its previous levels.  In August and September 2000, defendants spent $10,000 to construct a 15-foot-high fence running along the north and east boundaries of the property.

Pollack testified that the storage levels represent a 7- to 10-day inventory, which is necessary to meet customer demand.  If defendants were required to reduce the storage area, they would not be able to operate the business on the site.

The current zoning ordinance took effect in 1992.  It merged the D-1 and D-2 industrial districts into a single "I industrial" district.  Marengo Zoning Ordinance §3.12--1 
et seq.
 (eff. November 9, 1992).  One of the permitted uses was outdoor storage.  The ordinance provided, however, that "[t]he outdoor storage areas shall be located in the side or rear yard adjacent to the main structure and not exceed 1,00[0] square feet in area."  Marengo Zoning Ordinance §3.12--3(A)(22) (eff. November 9, 1992).  In 1995, the 1992 ordinance was amended to allow an outdoor storage area exceeding 1,000 square feet upon the granting of a special use permit.  Marengo Zoning Ordinance §3.12--3(A)(22) (eff. August 14, 1995).

In 1999, defendants planned to construct a loading dock.  When plaintiff learned of the plan, it inspected defendants' property.  On April 21, 1999, plaintiff sent defendants a letter informing them that their outdoor storage area exceeded 1,000 square feet.  In July 1999, defendants sought a special use permit.  The application went before plaintiff's planning commission, and ultimately plaintiff's city council denied it.  Defendants did not seek administrative review of the decision.

Before 1999, plaintiff never complained to defendants about the outdoor storage area.  Plaintiff never took any affirmative action, however, to allow the excess storage space.  Defendants had ongoing contact with fire inspectors who came to the property and told defendants where the pallets could be stored, how high they could be stacked, and where the fire lanes should be located.  In 1991 and 1997, plaintiff inspected the property before defendants erected machine sheds on the site.  If, after these inspections, plaintiff had informed Pollack that his use of the property violated the 1,000-square-feet limitation, he would have addressed the problem and would not have built the new structures unless the issue was resolved.

The trial court found that at the time defendants began using the property they had a right to use up to 10% of the lot as outdoor storage and that after 1992 that right continued as a legal nonconforming use.  The court also found, however, that plaintiff's mere inaction and delay in enforcing its ordinances did not give rise to 
laches
 or equitable estoppel.  Therefore, defendants did not have the right to continue using more than 9,924 square feet of the lot for storage.  Plaintiff timely appealed, and defendants timely cross-appealed.  See 155 Ill. 2d R. 303(a)(3).

Before addressing plaintiff's argument on appeal, we must address defendants' contention that the 10% storage limit never applied to them.  Defendants raised this argument in the trial court, but the court did not specifically address it.  After reviewing the ordinance, we conclude that defendants' argument is meritless.

According to defendants, because they did not operate an industrial or manufacturing plant, the 10% outdoor storage limit  did not apply to them.  When defendants purchased the property, the ordinance provided:

"Within any 'D-2' Industrial District no *** premises shall be used *** except for one or more of the following purposes:

(A) Any use permitted in the 'C' Commercial District and 'D-1' Light Industrial District ***.

(B) Blacksmith shop.

(C) Bottling works.

(D) Dyeing and cleaning establishments.

(E) Milk distributing station.

(F) Lumber or building materials yard.

(G) Wholesale establishments.

(H) Warehouses and storage plants.

(I) Coal yards.

(J) Wholesale storage of oil, gasoline, or other petroleum products.

(K) Printing plants.

(L) Heavy metal stamping plants.

(M) Public utility substations and facilities.

(N) Foundries.

(O) All other industrial uses not specifically provided for under §150.41 [D-1 Light Industrial] or [§150.65 governing special use permits].

(P) Industrial and manufacturing plants, where the operations are conducted in one or more buildings and not more than 10% of the lot or tract is used for the open storage of products, materials, or equipment.

***

(R) Other uses of a similar and no more objectionable character to those principal uses permitted."  Marengo Zoning Code §150.51 (eff. October 3, 1975).

Defendants stress that the 10% storage limit applies only to industrial and manufacturing plants.  They assert that their business falls outside section 150.51(P) and instead within one of the D-1 uses referenced in section 150.51(A).  One of the permitted D-1 uses is the "manufacturing, compounding, assembling, packaging, or treating of articles or merchandise from the following previously prepared materials: *** (24) Wood (excluding saw and planting mills)."  Marengo Zoning Code §150.41(C) (eff. October 3, 1975).

Municipal ordinances are interpreted under the rules of statutory construction.  
Monat v. County of Cook
, 322 Ill. App. 3d 499, 506 (2001).  The primary goal is to determine the drafter's intent.  
Daley v. American Drug Stores
, 312 Ill. App. 3d 1133, 1135-36 (2000).  The best evidence of this intent is the language of the ordinance, which must be given its plain and ordinary meaning.  
Daley
, 312 Ill. App. 3d at 1136.  

Defendants repair and resell used wood pallets.  They engage in none of the specific activities listed in section 150.41(C)(24).  Instead, defendants' business falls squarely within the general definition of "manufacturing or industry," which is "[a]ny use in which the major activity is the treatment, processing, 
rebuilding
, 
repairing
, or wholesale storage of material, products, or items and where the finished product is not acquired by the ultimate user on the premises."  (Emphasis added.)  Marengo Zoning Code §150.01 (eff. December 22, 1959).  Section 150.51(P) best characterizes defendants' use of the property.  Therefore, the 10% storage limit applied to defendants when they purchased the property.

Plaintiff's argument in the trial court and on appeal is that because from 1986 to 1992 defendants continually exceeded the 10% storage limitation in effect at the time, its use of the property cannot be a 
legal
 nonconforming use.  A trial court's decision following a bench trial will not be reversed unless it is against the manifest weight of the evidence.  
Pickus Construction & Equipment v. American Overhead Door
, 326 Ill. App. 3d 518, 523 (2001).  A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  
Pickus
, 326 Ill. App. 3d at 523.

A legal nonconforming use is a use that is not permitted under the current zoning ordinance but is allowed to continue because it predates the ordinance.  
Bainter v. Village of Algonquin
, 285 Ill. App. 3d 745, 750-51 (1996).  The right to a legal nonconforming use is a property right that cannot be taken away unreasonably or for reasons not based on public welfare.  
Hammond v. City of Chicago
, 139 Ill. App. 3d 98, 102 (1985); 
Sanderson v. De Kalb County Zoning Board of Appeals
, 24 Ill. App. 3d 107, 110 (1974).  Plaintiff's zoning ordinance protects such nonconforming uses.  It provides:

"Any nonconforming structure or use which existed lawfully at the time of the adoption of this Ordinance and which remains nonconforming and any such structure or use which shall become nonconforming upon the adoption of this Ordinance, or of any subsequent amendments thereto, may be continued subject to the regulations which follow."  Marengo Zoning Ordinance §5.2 (eff. November 9, 1992).

According to plaintiff, because defendants continually exceeded the prior 10% storage limit, their use of the property did not exist lawfully before or at the time plaintiff enacted the 1,000-square-feet limit.  Plaintiff is correct that a use that was not lawful at its inception is not a legal nonconforming use and therefore may be eliminated if it violates the current zoning ordinances.  
Wright v. County of Du Page
, 316 Ill. App. 3d 28, 39 (2000).  Plaintiff's ordinance reflects this principle.  It states:

"This Ordinance shall not be interpreted to validate or make lawful any unlawful use or structure existing upon the effective date of this Ordinance.  Any such unlawful use or structure shall remain unlawful to the extent that said use or structure is in conflict with the provisions of this Ordinance."  Marengo Zoning Ordinance §7.4 (eff. November 9, 1992).

Section 7.4 does not defeat defendants' prior 
legal
 use of the property.  For example, in 
Wright
, the property owners' entire use of the property was illegal.  The owners operated spas that provided erotic massages.  The spas were located in a B-1 local business district and a "B-2 general business" district.  At the time the spas began operating, adult businesses were allowed only in "I-1 light industrial" and "I-2 general industrial" districts.  We held that the spas were properly classified as adult businesses and that from their inception the spas were illegal uses in the business districts where they were located.  
Wright
, 316 Ill. App. 3d at 39.

Here, defendants were entitled to use their property for outdoor storage but exceeded the limits of that use.  We are aware of no authority requiring us to hold that, by exceeding the 10% limit, defendants forfeited their right to continue using 10% of the lot for outside storage.  Adopting plaintiff's argument would lead to absurd results and unreasonably result in the forfeiture of vested property rights.  For example, a minor violation such as exceeding the storage limit by only a few square feet could be used to eliminate an otherwise legal nonconforming use.

Although it did not address the precise issue before us, 
Welch v. City of Evanston
, 87 Ill. App. 3d 1017 (1980), is instructive.  There, in 1925, the original owners obtained a permit to construct a 10-unit apartment building.  At the time, the property was zoned for commercial use and allowed up to 16 apartment units.  The permit required the owners to comply with its conditions, however.  The building contained 11 apartments.  Under the 1960 ordinance, the building was located in a "B-2 business" district, which allowed only three apartment units.  In 1974, the City of Evanston sought to eliminate the eleventh apartment.  
Welch
, 87 Ill. App. 3d at 1018-19.  The trial court and the reviewing court held that, because the eleventh apartment violated the building permit, the apartment was not "lawfully established" and therefore could not be a legal nonconforming use.  
Welch
, 87 Ill. App. 3d at 1023.

Welch
 is different from this cause because the City of Evanston never claimed that, by using the eleventh apartment, the owner forfeited his right to continue using apartments 4 through 10.  What is significant about 
Welch
, however, is the court's statement that the eleventh apartment was the use not lawfully established.  Here, the first 9,924 square feet of storage space defendants used are like apartments 4 through 10 in 
Welch
.  That storage area was a use that existed lawfully at the time plaintiff enacted the 1992 ordinance.  The area of storage greater than 9,924 square feet is like the eleventh apartment in 
Welch
.  It did not exist lawfully before 1992 and cannot continue as a nonconforming use.

It is very easy here to separate the permitted use from the prohibited use, and we see no reason not to do so.  At no time has plaintiff advanced a public welfare argument in favor of discontinuing the permitted use.  Also, by applying for the special use permit in 1999, defendants did not waive their right to claim a legal nonconforming use.  See 
Bainter
, 285 Ill. App. 3d at 756-57.  The trial court's finding that defendants were entitled to continue using 10% of their lot for outdoor storage is not against the manifest weight of the evidence.

Defendants contend that the trial court erred in rejecting their claim that they are entitled to continue using 12,000 to 16,000 square feet of the lot for outdoor storage.  They claim that plaintiff is barred by 
laches
 from enforcing either the current 1,000-square-feet or the 10% storage limit.  
Laches
 is a doctrine that bars relief to a plaintiff where, because of the plaintiff's delay in asserting a right, the defendant has been misled or prejudiced.  
City of Rockford v. Suski
, 307 Ill. App. 3d 233, 244 (1999).  Although a mere delay in asserting a right does not constitute 
laches
, if the defendant has relied to his detriment on the circumstances complained of and the delay has been unreasonable, then it would be unjust to grant relief to the plaintiff.  
City of Rochelle v. Suski
, 206 Ill. App. 3d 497, 501 (1990).

Although 
laches
 may be asserted against a municipality, where, as here, a governmental body is exercising its governmental functions, 
laches
 should be invoked only in extraordinary circumstances.  
Haeflinger v. City of Wood Dale
, 129 Ill. App. 3d 674, 677, 679 (1984).  Also, the mere nonaction of governmental officers is not sufficient.  Instead, there must have been an affirmative act that induced the action of the other party under circumstances where it would be inequitable to permit the governmental entity to retract what its officers have done.  
County of Du Page v. K-Five Construction Corp.
, 267 Ill. App. 3d 266, 275 (1994).

We acknowledge that the delay here was long.  Defendants have violated the storage limits continually since they began operating the business in 1986, and plaintiff did not act until 1999.  Nevertheless, the trial court was amply justified in finding that 
laches
 does not apply.  First, the evidence reveals at most only nonaction on the part of plaintiff.  Representatives of plaintiff inspected the premises in 1991 and 1997 when defendants wanted to erect new structures.  The representatives' failure to mention anything about the violation of the outdoor storage limit does not constitute 
laches
.  Plaintiff's representatives were present for a different purpose, and their apparent failure to notice other potential violations is not significant.  Similarly, the fire inspectors presumably were present to address fire safety issues and not to inspect for potential zoning ordinance violations.  Although plaintiff did not complain about the violation until 1999, at no time did any agent of plaintiff make any affirmative representations or give any assurances about the outdoor storage issue.

Moreover, defendants presented essentially no evidence that the delay was unreasonable or that they relied to their detriment on anything plaintiff did or failed to do.  The only evidence of detrimental reliance was that defendant continued to operate the business, put two new structures on the site, and made other improvements to the property.  The evidence does not reveal, however, why defendants will not be able to comply with the storage limitation and continue to operate the business successfully.  Pollack merely stated in a conclusory fashion that defendants could not operate the business on the site if they were forced to reduce the storage area.  Defendants presented no evidence, however, about how much it would cost or how difficult it would be to comply with the pre-1992 ordinance.  See, 
e.g.
, 
K-Five Construction
, 267 Ill. App. 3d at 275-76 (owners testified that it would cost them $600,000 to relocate asphalt plant).  For example, it may have been  economically feasible to shift some of the storage indoors or lease storage space.  Considering this evidence, the trial court reasonably could have found that the extraordinary circumstances required to invoke 
laches
 were not present here.  See, 
e.g.
, 
K-Five Construction
, 267 Ill. App. 3d at 275-76 (acting on statement by director of county's building department that asphalt plant was a legal nonconforming use, owners spent $600,000 on improvements to plant).

We conclude that the trial court's findings are not against the manifest weight of the evidence and we therefore affirm the judgment of the circuit court of McHenry County.

Affirmed.

BYRNE and KAPALA, JJ., concur.